**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| BUTLER BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: **2:07-cv-391-ID** |
| v. | ) | Case No.: **2:07-cv-546-MEF** |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| JOHN E. POTTER, Postmaster General, | ) | |
| of the United States, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**

Comes now the defendant, by and through Leura G. Canary, United States Attorney for the

Middle District of Alabama, and moves this Court to dismiss the above-styled action pursuant to

Rules 12(b)(1), 12(b)(6) and, alternatively, 56© of the Federal Rules of Civil Procedure.  The

defendant asserts that each and every claim within the complaint is due to be dismissed as the

plaintiff has failed to state a claim upon which relief may be granted and/or Defendant is entitled to

summary judgment as matter of law.  In support of this motion, Defendant relies on the following:

1.      The pleadings, which are of record and, hence not submitted herewith;

2.      The declarations of Shirley Eaves and Pete Marcoux which are attached hereto; and

3.      The memorandum brief contemporaneously filed herewith.

WHEREFORE, premises considered, the complaint is due to be and should be dismissed

and/or summary judgment granted Defendant with costs of this litigation taxed to Plaintiff.

Respectfully submitted this the 28th day of August, 2007.

LEURA G. CANARY
United States Attorney

By: s/R. Randolph Neeley
R. RANDOLPH NEELEY
Assistant United States Attorney
Bar Number: 9083-E56R
Post Office Box 197
Montgomery, AL  36101-0197
Telephone No.: (334) 223-7280
Facsimile No.: (334) 223-7418
**E-mail: rand.neeley@usdoj.gov**

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/EDF system which will send notification of such filing to

plaintiff's attorney, K. Anderson Nelms.  I also certify that I have served a copy of the foregoing

upon the plaintiff by placing same in the United States Mail, properly addressed to 4504

Sunnybrook Drive, Montgomery, AL 36108.

s/R. Randolph Neeley
Assistant United States Attorney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| BUTLER B. BROWDER, | * |
| | * |
| Plaintiff, | * |
| | * CIVIL ACTION NO. 2:07-CV-391-ID |
| v. | * |
| | * CIVIL ACTION NO. 2:07-CV-546-MEF |
| JOHN E. POTTER, USPS | * |
| POSTMASTER GENERAL, | * |
| | * |
| Defendants. | * |

## DECLARATION OF SHIRLEY B. EAVES

Under penalty of perjury I, Shirley B. Eaves, declare as follows from personal knowledge:

1.     I am a paralegal specialist in the Memphis office of the United States Postal Service Law Department. In that capacity, I assisted the assigned postal counsel, Kathy L. Janowicz, in the handling of the MSPB appeal styled as *Butler B. Browder v. United States Postal Service*, MSPB Docket No. AT-0752-06-1072-I-1. I share access to and custody of the case file generated in that matter, including copies of all pleadings and other materials placed into the official record of the case. I am attaching as exhibits to this declaration excerpts of those filings, as marked and identified below:

Exhibit 1 --   February 2, 2006, Notice of Proposed Removal served on Butler Browder delineating specific allegations of misconduct, including Charge 2 that addresses Butler Browder's failure to report to work as directed on January 10, 2006, and then on January 17, 2006, for an investigative interview.

Exhibit 2 --    July 31, 2006, Final Agency Decision finding no discrimination with respect to Browder's removal and informing him of his right to seek an administrative hearing before the Merit Systems Protection Board (MSPB or Board).

Exhibit 3 --    Browder's August 21, 2006, appeal to the MSPB.

Exhibit 4 --    MSPB scheduling order (Order and Notice of Hearing and Prehearing Conference) issued by Administrative Judge Stuart A. Miller on November 8, 2006, requiring, among other things, the parties to state the case issues.

Exhibit 5 --    Browder's statement of issues for adjudication before the MSPB made by him in his capacity as Appellant. The statement specifically raised allegations of Family Medical Leave Act (FMLA) violations with respect to the disciplinary specifications alleging that Appellant failed to follow orders when he failed to report as directed for investigative interviews on January 10 and 17, 2006, as well as EEO race and reprisal claims. See ¶¶ 1, 3, 5, 7, 8, 10, 13, and 14 within the document.

Exhibit 6 --    Transcript of the settlement agreement taken by MSPB Administrative Judge (AJ) Stuart A. Miller and entered into the MSPB record. Among other provisions, the agreement at pages 5 and 7 provided for the rescission of the removal action and for Browder to rather retire from the Postal Service as of a given date and further provided that the instant MSPB appeal was settled.

2

Exhibit 7 --    December 4, 2006, Initial Decision by AJ Miller finding the settlement agreement to be valid on its face, entering the settlement agreement into the record, and dismissing the underlying MSPB appeal.  The decision informed Browder of appeal rights either to the Full Board of the MSPB or to the United States Court of Appeals for the Federal Circuit.

Exhibit 8 --    December 4, 2006, pleading by Browder in which he seeks to have the settlement agreement "set aside."

Exhibit 9 --    January 9, 2007, Declaration of Diana Chabot giving a transcription of a December 4, 2006, voice mail message from Browder to Kathy Janowicz, in which he states that he is trying to contact the MSPB AJ in order to see if he "can vacate" the settlement agreement entered into earlier that day.

Exhibit 10 --    Browder's December 12, 2006, petition for review to the Full Board of the MSPB, in which Browder seeks to have the Full Board find that the settlement agreement was invalid.

Exhibit 11 --    Full Board Decision served on March 6, 2007, in which Browder's petition for review was denied.  The Board decision informed Browder of his right to seek review of its decision by the United States Court of Appeals for the Federal Circuit.

Exhibit 12 --    Browder's April 13, 2007, appeal of the MSPB final order to the Office of Federal Operations (OFO) of the Equal Employment Opportunity Commission (EEOC).

3

Exhibit 13 -- May 15, 2007, decision of the EEOC finding that the EEOC lacked jurisdiction to review procedural matters of the MSPB and, further, that the EEOC has no jurisdiction over settlement agreements entered into the record of the Board.

Exhibit 14 -- Browder's May 29, 2007, motion to the EEOC to reconsider its declination to review the MSPB ruling on the validity of the settlement agreement that was entered into during the Board proceedings.

Exhibit 15 -- June 12, 2007, letter of the EEOC finding that the requested reconsideration was not provided for by the EEOC regulations.

I have read this and the preceding three pages and state under penalty of perjury on this 27th day of August, 2007, that the information stated there is true and correct to the best of my knowledge.

Shirley B. Eaves
Paralegal Specialist
Law Department
United States Postal Service
225 N. Humphreys Blvd.
Memphis, TN  38166-0170
Telephone:  (901) 747-7304
Fax:  (901) 747-7371

4

 **UNITED STATES POSTAL SERVICE**

Delivery Confirmation No. 030 1290 0005 0472 4001
Certified Mail No. 7099 3220 0002 5939 2990
Return Receipt Requested

February 2, 2006

Our Ref:      CJHarris:05561:aw

Subject:      Notice of Proposed Removal

To:           Butler Browder
              4504 Sunnybrook Dr.
              Montgomery, AL 36108-5046

This is advance written notice it is proposed to remove you from the Postal Service no sooner than 30 calendar days from the confirmed delivery of this notice. Day 1 of this time frame is the day following the confirmed delivery by either priority mail or certified mail of this proposal, whichever day is earlier. The reason for this action is:

## CHARGE 1: IMPROPER CONDUCT

- On November 12, 2005 after reporting to work you requested approximately 7 hours of sick leave and submitted a signed form 3971. Later this day you attended the Auburn-Georgia football game which was held in Athens, Georgia approximately 230 miles or more from your home.

- On November 18, 2005 you called in sick for two days, which would include November 19, 2005. On November 19, 2005 you attended the Auburn-Alabama football game, which was held in Auburn, Alabama approximately 60 miles or more from your home. You signed a form 3971 for this sick leave request.

Each form 3971 carries the following notation:

**Warning:** The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. *(18 U.S.C. 1001)*

You thus improperly obtained both sick leave and sick leave compensation for these dates and, separately, falsified documents in furtherance of this plan.

## CHARGE 2: FAILURE TO FOLLOW INSTRUCTIONS

- On December 2, 2005 you left a form 3971 at the general clerk's desk requesting sick leave, indicating you had a doctor's appointment and left the building. Your actions were contrary to instructions to notify your supervisor before clocking out and leaving the building prior to your scheduled ending time.

**EXHIBIT
1**

- On January 6, 2006 you were sent a letter directing you to report to work on January 10, 2006 in order to discuss the issues of your request for light duty. You failed to do as instructed.

- On January 10, 2006 you were again sent a letter directing you to report to work immediately, but no later than January 17, 2006. This letter informed you of the need to conduct an investigative interview concerning a report from the OIG and several other matters. You failed to do as instructed.

## CHARGE 3: FAILURE TO FOLLOW AGENCY LEAVE REQUESTING PROCEDURES

- On October 3, 2005 you failed to report for duty when scheduled to work overtime. You failed to follow established call-in procedures to report your unscheduled absence.

- On November 18, 2005 you failed to follow established call-in procedures to report your unscheduled absence. You called the workroom floor and informed Acting Supervisor, Nikki N. Lowe you were requesting sick leave for two days. Ms. Lowe instructed you to call the Interactive Voice Response (IVR) Call Center to report your unscheduled absence. You failed to do so and are charged accordingly.

## CHARGE 4: FAILURE TO MAINTAIN A REGULAR WORK SCHEDULE

A review of your attendance record reveals you are failing to maintain a regular work schedule. You have been absent on all or a portion of your following scheduled work dates.

### DATES

| | |
|---|---|
| 10/03/05 | 11/12/05 |
| 10/18/05 | 11/18/05 |
| 10/19/05 | 11/19/05 |
| 10/20/05 | 12/02/05 |
| 10/21/05 | |

You are required to be regular in attendance and have failed to be so.

The following prior elements of discipline have been considered in making this proposal:

07/05 Letter of Warning – Failure to Maintain a Regular Work Schedule
09/05 7-Day No Time Off Suspension—Unacceptable Conduct

You and/or your representative may review the material relied on to support the reasons for this notice at the Labor Relations office located in the Montgomery P&DC. If you do not understand the reasons for this notice, contact Jerri W. Taylor at (334) 244-7680 for further explanation.

You and/or your representative may answer this proposal within 10 calendar days from the date of your receipt of this letter, either in person or in writing to Joey Sherman, Officer-in-Charge, Mobile, AL, at 250 St. Joseph St., Mobile, AL 36601-9998 or both. You may call his office at 251-694-5901 to make an appointment. You may also furnish affidavits or other written material to Mr. Sherman within 10 calendar days from your receipt of this letter.

You will be afforded a reasonable amount of official time for the above purpose if you are otherwise in a duty status. After the expiration of the 10-day time limit for reply, all the facts in the case, including any reply you submit will be given full consideration before a decision is rendered. You will receive a written decision from Mr. Sherman.

You have the right to file a grievance under the grievance-arbitration procedure set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice. If this action is overturned in the grievance-arbitration procedure, back pay will be allowed, unless otherwise specified in the appropriate award or decision, only if you have made reasonable efforts to obtain other employment during the relevant non-work period. The extent of documentation necessary to support your back pay claim is explained in the ELM, Section 436.

*Charlie J. Harris*
Charlie J. Harris
Acting Manager, Distribution Operations
Montgomery P&DC

Attachments: ELM 436

## UNITED STATES POSTAL SERVICE
### EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF:

**Butler Browder, Jr.**
**Complainant,**

**Agency Case. No. 1H-361-0004-06**

v.

**Formal Filed: April 5, 2006**

**John E. Potter,**
**Postmaster General,**
**c/o Southeast Area Operations**
**Respondent.**

### Notice of Final Agency Decision – Mixed Case

This is the final agency decision of the U. S. Postal Service regarding your mixed case complaint of discrimination identified above. In that complaint, you alleged discrimination based on race (Black) and retaliation (prior protected activity) when, on February 2, 2006 you were issued a Notice of Removal charging you with improper conduct, failure to follow instructions, failure to follow Agency leave requesting procedures and failure to maintain a regular work schedule. You were issued a Letter of Decision dated March 1, 2006 upholding the proposed removal.

Your complaint was processed in accordance with applicable Equal Employment Opportunity Commission (EEOC) Regulations, 29 C.F.R., §1614.103, *et. seq.* Following a Postal Service investigation, you were provided a copy of the investigative report and notified of the forthcoming final agency decision on the merits. Thus, in accordance with the EEOC's current regulations, 29 C.F.R.§ 1614.302(d), *et seq.*, this decision is being issued on the merits of your complaint.

Applicable Law

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and subsequently refined that analysis in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The *McDonnell Douglas* and *Burdine* approach involves a three-step process when a complainant alleges intentional discrimination (commonly referred to as a "disparate treatment" claim). The complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish by a preponderance of the evidence a *prima facie* case of discrimination on the alleged basis. *Furnco Construction Co. v. Waters*, 438 U.S. 567, 576 (1978). A complainant may establish a *prima facie* case of

EXHIBIT
2

Final Agency Decision
Butler Browder, Jr.
1H-361-0004-06
Page 2

discrimination with circumstantial evidence by showing that he or she (1) belonged to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).

Once a *prima facie* case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Furnco Construction Co.*, 438 U.S. at 578. *See also St. Mary's Honor Center. v. Hicks*, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. *Burdine*, 450 U.S. at 254. If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." *Hicks*, 509 U.S. at 507; *United States Postal Service v. Aikens*, 460 U.S. 711, 715 (1983). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretexts for discrimination. *Hicks*, 509 U.S. at 507, 516; *Nichols v. Grocer*, 138 F.3d 563, 566 (5th Cir. 1998); *Swanson v. General Services Administration*, 110 F.3d 1180, 1185 (5th Cir. 1997). Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. *Southard v. Texas Board. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997). The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 254; *Hicks*, 509 U.S. at 511.

At all times, the ultimate burden of persuasion remains with the complainant. *Board of Trustees of Keene College v. Sweeney*, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). In *Hicks*, the Court held that in order to impose liability upon an employer for discriminatory employment practices there must be an ultimate finding of unlawful discrimination regardless of whether or not the employer's explanation for its action was believable.

Retaliation

To establish a *prima facie* case based on reprisal, a complainant must show that: (1) he/she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he/she was subsequently disadvantaged by an adverse action; and (4) there is a causal link between the protected activity and adverse action. *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F. Supp. 318, 324 (D. Mass), aff'd 545 F.2d 222 (1st Cir. 1976); *Manoharan v. Columbia University College of Physicians and Surgeons*, 842 F. 2d 590, 593 (2nd Cir. 1988); *Witmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000). The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2nd Cir. 1980). In addition, in *Gunther v. County of Washington*, 623 F.2d 1303, 1316 (9th Cir. 1979), aff'd 452 U.S. 161 (1981), the court held that essential to the link between protected activity and adverse action is showing that the official taking action was aware that the complainant engaged in protected activity. To support a finding of unlawful

Final Agency Decision
Butler Browder, Jr.
1H-361-0004-06
Page 3

retaliation, there must be proof that the agency official(s) took the action at issue because of complainant's prior protected activity and sought to deter complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), p. 8-16.

Any harassment of an employee that would not occur but for the employee's previous EEO activity may violate Title VII if sufficiently patterned or pervasive. *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C. Cir. 1985). For harassment to be considered retaliatory conduct in violation of Title VII, it must be sufficiently pervasive or severe as to create a hostile work environment which significantly and adversely affects the emotional or psychological well being of the employee, and must somehow be connected to that employee's previous EEO activity. See *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412-1413 (10th Cir. 1987); Gilbert *v. City of Little Rock, Ark.*, 722 F.2d 1390, 1394 (8th Cir. 1983); Henson *v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982); Bundy *v. Jackson*, 641 F.2d 934, 943-944 (D.C. Cir. 1981); Rogers *v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971).

Discussion/Analysis

At all times relevant to the issue(s) in this complaint, you were employed as a mail handler technician at the Montgomery, Alabama Processing and Distribution Center. (Report of Investigation [ROI] Exhibit 1). Your duty hours are 05:30 (5:30 am) to 14:00 (2:00 pm). Your off days are Sunday and Monday. (ROI Counselor's Report, p. 1). You have alleged that Acting Manager of Distribution Operations Charlie J. Harris (Black), Manager of the Montgomery Processing and Distribution Center Roderick M. Carlton (White) and Acting Postmaster Joey Sherman (Asian American) intentionally discriminated against you because of your race (Black) and retaliation (prior protected activity) when, on February 2, 2006 you were issued a Notice of Removal charging you with improper conduct, failure to follow instructions, failure to follow Agency leave requesting procedures and failure to maintain a regular work schedule. You were issued a Letter of Decision dated March 1, 2006 upholding the proposed removal.

Agency policy requires that request for sick leave be requested on PS Form 3971 and approved in advance whenever possible. Employee and Labor Relations Manual (ELM) §513.331. (ROI Exhibit 32, p. 1). The supervisor approves or disapproves leave requests. If the supervisor grants an alternate type of leave, the change must be noted on the form. ELM §413.342. (ROI Exhibit 32, p. 2). Employees must provide evidence of incapacity for work even if requesting leave under the Family and Medical Leave Protection Act (FMLA). ELM §513.332. (ROI Exhibit 32, p. 1). ELM §513.364 states that medical documentation of absences must

> …provide an explanation of the nature of the employee's illness or injury sufficient to establish to management that the employee was (or is) unable to perform his or her normal duties for the period of the absence. Normally medical statements such as "under my care" or "received treatment" are not acceptable evidence of incapacitation to perform duties.

Final Agency Decision
Butler Browder, Jr.
1H-361-0004-06
Page 4

(ROI Exhibit 32, p. 3). "Medical documentation or other evidence of incapacity for work...is required...when the supervisor deems documentation desirable for the protection of the interests of the Postal Service." ELM §513.361. (ROI Exhibit 32, p. 2). In the absence of proof of incapacitation, sick leave can be denied and the leave may be charged to annual leave, Leave Without Pay (LWOP) or Absent Without Official Leave (AWOL). §513.365. (ROI Exhibit 32, p. 3). Medical documentation of incapacity must be provided within appropriate time frames if leave is to be FMLA protected. If the employee has been AWOL and subsequently provides medical documentation, the absence will be changed from AWOL to FMLA-LWOP. ELM §665.42. (ROI Exhibit 32, p. 6). On December 12, 2001, a Memorandum for All Employees reinforced the above policy and set forth the call-in procedure. The Memorandum advised that the "leave program is a valuable benefit which, if properly used, protects employees from loss of income while incapacitated by illness or injury and provides time for rest and recuperation." (ROI Exhibit 30).

On November 12, 2005 you reported to work at 5:30 am. Just after 6:30 am, you submitted PS Form 3971 to request 6.86 hours of paid sick leave between 0664 and 1400. The leave was approved. PS Form 3971 warns that providing false information on the form is a criminal offense punishable by 5 years incarceration and a $10,000 fine. (ROI Exhibit 7, p. 5). After indicating that you could not work because you were ill, you left work and drove to a football game in Athens, Georgia, approximately 230 miles away. To gain entry to the game, it was necessary for you to show photo identification and sign for tickets left for you by a member of the football team. (ROI Exhibit 3, Exhibit 6, pp. 5, 17).

On November 18, 2005, you called in to report an illness and advise that you would be out of work November 18-19, 2005. Supervisor Harris testified that he was suspicious due to your prior activities. As a result, he contacted the Office of the Inspector General (OIG) to request an investigation. (ROI Affidavit B, p. 5). The investigation revealed that you traveled to a football game between Alabama and Auburn where you again showed photo identification and signed for your tickets. The OIG inspectors observed you at the game and took video and still photographs of you at the game. The game took place in Auburn, Alabama approximately 60 miles from your home. When questioned by the Inspectors, you initially denied attending the game. (ROI Exhibit 3, Exhibit 6, pp. 4-12). You were previously disciplined for using sick leave to engage in recreational activities. In September 2005, you were issued a 7-day suspension after using sick leave to travel to Biloxi, Mississippi to gamble. (ROI Exhibit 16, p. 3).

In addition to improper conduct based upon abuse of sick leave, the notice of removal cited failure to follow instructions. On December 2, 2005 you left work without notifying a supervisor. You subsequently ignored two letters instructing you to return to work. You were charged with failure to follow Agency leave requesting procedures when: you failed to call in when scheduled to work overtime on October 3, 2005; and when you called in on November 18, 2005, you were instructed to call the Interactive Voice Response call center. You failed to do so. You were charged with failure to maintain a regular work schedule as the result of full or partial absences on October 3, 18, 19, 20, 21, and November 12, 18, 19 and December 2, 2005. (ROI Exhibit 3). You have

Final Agency Decision
Butler Browder, Jr.
1H-361-0004-06
Page 5

alleged that the Notice of Removal was the result of discrimination based on race and retaliation.

You have alleged that you were removed improperly as there is no requirement that you provide evidence of incapacitation. You are incorrect. As noted above, paid sick leave is a benefit available to employees who may be required to submit proof of incapacitation. Nor was there anything improper in changing AWOL to sick leave to FMLA LWOP where submission of medical documentation was untimely. ELM §§ 513.332, 513.361, 513.364, 665.42.

In order to establish a *prima facie* case of discrimination, you must establish that similarly situated employees outside of your protected group received more favorable treatment. A similarly situated employee works in the same supervisory chain with the same hours and job duties: *Willis v. Dept. of Treasury*, EEOC Appeal No. 01A51459 (March 16, 2005). In order for two or more employees to be considered similarly situated, all relevant aspects of the employees' work situation must be identical or nearly identical. *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985). Where employees work in different departments, have different supervisors, perform different jobs, and have different functions, they are not similarly situated. *O'Neal v. USPS*, EEOC Request No. 05910490 (July 23, 1991); *Allen v. Department of the Navy*, EEOC Request No. 05900539 (June 15, 1990), *DePalmo v. U.S.P.S.*, EEOC Appeal No. 01A30382 (June 26, 2003). As you have alleged discrimination following a disciplinary action, you must also prove that the agency excused the misconduct in individuals outside of your protected class. *Wilson v. Dept. of Navy*, EEOC 03960052 (October 28, 1996). Similarly situated individuals will have similar disciplinary records. *Davis v. U.S.P.S.*, EEOC Appeal No. 01A51793 (March 31, 2006).

You have established membership in a protected group based on your race. However, you have failed to establish a *prima facie* case of discrimination based on race. You have named Shannon Butler (White), Mark Chriske (White) and Patrick Roberts (White) as comparison employees, alleging that they have not been disciplined. You are incorrect: each of the named employees has received discipline. Butler has received discipline including a Notice of Removal. Between May 2005 and February 2006 Ms. Butler received four disciplinary actions including a notice of removal. (ROI Exhibit 20, pp. 1-6). Mr. Chriske received a letter of warning for failure to maintain a regular work schedule on October 22, 2005. (ROI Exhibit 20, pp. 17-18). Between September 1, 2005 and December 28, 2005 Mr. Roberts received two letters of warning and two seven-day suspensions. (ROI Exhibit 20, pp. 7-12). You fail to present a *prima facie* case of discrimination where there is no difference to the treatment accorded to individuals inside and outside of your protected groups. *Arditi v. USPS*, EEOC No. 01911480 (August 21, 1991). Although your comparators may have had attendance problems, none of the alleged comparators has a similar history of fraudulently abusing sick leave to receive pay while engaged in recreational activities. Pursuant to evidence of record, you have falsified leave applications three times. You received discipline for improper conduct on September 18, 2005, less than two months before leaving work 'sick' on November 12, 2005 to attend a football game in Georgia.

Final Agency Decision
Butler Browder, Jr.
1H-361-0004-06
Page 6

None of the alleged comparators share your job title, although each received discipline. You were a mail handler technician, Butler was an expediter, Roberts is a parcel post distributor and Chriske is a mail handler.[1]    The Agency has identified John Carter (Black), David McCullough, Jr. (Black) and Terrell Wilson (White) as comparative employees.  Carter is a mail handler.  McCullough is a parcel post distributor and Wilson is a mail-processing clerk.  McCullough also has an EEO history: he filed Agency No. 4H-350-1245-95 on April 10, 1995. (ROI Exhibit 1, Exhibit 22, p. 5, Exhibit 19, pp. 1-6).

Several of the named employees are not in your supervisory chain.  Glen Evans and William Powell have supervised Ms. Butler, who also works different hours than you. Jeffrey S. Walton supervises Mr. Roberts.   John Haley supervises Mr. Wilson.  (ROI Exhibit 20).  Based on the foregoing, Chriske and Carter would be proper comparison employees only if you established that their job duties, hours, supervisory chain and disciplinary records were similar.   You have not done so.   Chriske has a single disciplinary event for improper call-in procedures and unscheduled absences.  He has not been charged with improper conduct for falsely obtaining paid leave.  (ROI Exhibit 20, p. 17).  Carter is within one of your protected groups (Black) and he cannot be used to establish disparate treatment based on race.  Mr. Carter received a letter of warning after being AWOL for 33 minutes on September 24, 2005.  (ROI Exhibit 20, p. 13).

You have failed to establish a *prima facie* case of retaliation.  As noted previously, in order to present a *prima facie* case of discrimination based on retaliation, you must provide evidence that: you engaged in prior protected activity; the responsible management official was aware of your prior activity; you were subjected to an adverse employment action; and that there is a nexus between your prior protected activity and the adverse employment action.

You have established that you engaged in prior protected activity.  You have filed 19 separate EEO complaints, including Agency No. 1H-361-0013-05 filed in September and Agency No. 1H-361-0018-05 filed October 18, 2005.  (ROI Exhibit 2).  You have also established that you were subjected to an adverse employment action when removed and that there is a temporal nexus between your removal and your prior protected activity.  The investigation into your misconduct began within one month of filing Agency No. 1H-361-0018-05.   You have also established that *some* management officials, including those who initiated the disciplinary action against you, were aware of your prior activity.  Manager Carlton and Supervisor Harris testified that they were aware of your prior EEO activity and that your race and EEO activity played no part in their decision-making.  (ROI Affidavit B, p. 7, Affidavit C, p. 3).  The decision to remove you was made by Acting Postmaster Sherman.  Acting Postmaster Sherman testified that he did not know you at all and the he became aware of your race when viewing the OIG video.  He testified that he was unaware of your prior EEO activity when he made his decision. (ROI Affidavit D, pp. 3-4).

---

[1] The record does not establish how the duties of a mail handler are different from those of a mail handler technician.  However, the different job titles and occupation codes are noted on each respective form 50.  (ROI Exhibit 1, Exhibit 19, p. 3).

Final Agency Decision
Butler Browder, Jr.
1H-361-0004-06
Page 7

Having thus articulated the agency's legitimate, facially non-discriminatory explanation, all presumptions of discrimination now drop from the case. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 125 L.Ed. 407, 113 S.Ct. 2742 (1993). The burden shifts to the complainant to prove by a preponderance of the evidence that the agency's proffered reasons are merely a pretext for discrimination.

Pretext may be demonstrated by showing "such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the agency's proffered reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). A review of the record indicates that you offer nothing more than rank speculations and conclusory allegations. These efforts are insufficient in order to establish pretext. *Morgan, supra*. Your self-serving, improbable speculation and conclusions will not support any finding that you have carried your burden. See *Medina-Munoz v. R.J. Reynolds*, 896 F.2d 5 (1st Cir. 1990); Jones v. Gerwens, 874 F.2d 1534 (11th Cir. 1989).

The preponderance of the evidence clearly supports a conclusion that you have failed to establish a prima facie case for disparate treatment discrimination. Moreover, you have failed to submit any evidence into the record that the reasons articulated by the Agency are not the true reasons for their actions. Simply stated, you have not met the burden of establishing that the Agency's articulated reasons were not credible or were a pretext to mask prohibited discrimination. Finally, you have not presented any evidence to indicate that agency officials harbored a discriminatory animus towards members of any of your protected groups. Although you claim that the action against you was retaliation for recent EEO activity, pursuant to evidence of record, you have had EEO complaints pending for virtually all of the past ten years. During that time, Supervisor Harris and Manager Carlton were clearly aware of your race. The Agency maintains that you were removed for repeated and intentional violations of Agency rules, policies and procedures and a contumacious refusal to follow lawful instructions. You have not presented evidence of pretext.

Conclusion

After carefully considering the entire record, and applying the legal standards outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F.Supp. 318 (D.Mass), aff'd 545 F.2d 222 (1st Cir. 1976) (applying the standard to reprisal cases); I find that you have failed to prove that you were subjected to discrimination as alleged. Consequently, your case is now closed with a finding of no discrimination.

Final Agency Decision
Butler Browder, Jr.
1H-361-0004-06
Page 8


<u>Appeal Rights</u>

If you are dissatisfied with this final agency decision, as a preference eligible, you have the right to appeal this decision to the Merit Systems Protection Board, **not the EEOC**, no later than 30 days from receipt.  Your appeal requesting a hearing before the MSPB should be sent to the Merit Systems Protection Board, Atlanta Regional Office, 401 Peachtree Street, NW, Suite 1050, Atlanta, GA 30306-3527.

In lieu of an appeal to the MSPB, you may file a civil action in an appropriate U.S. District Court within 30 calendar days of your receipt of this decision.  If you choose to file a civil action, that action should be captioned **Butler Browder v. John E. Potter, Postmaster General**.  You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security in such circumstances as the court deems just.  Your application must be filed within the same 90-day time period for filing the civil action.

*Doris a Hill*                    7-31-06
Doris A. Hill
EEO Services Analyst
NEEOISO
PO Box 21979
Tampa FL 33622-1979

Enclosures:   MSPB Appeal Form

cc:
Butler Browder, Jr.          Delivery Confirmation No. 0305 1720 0001 2916 2371
4504 Sunnybrook Drive
Montgomery, AL 36108-5046

Manager, Human Resources
U. S. Postal Service
Alabama District
351 24th Street, N.
Birmingham, AL 35203-9997

Manager, EEO Compliance & Appeals
U. S. Postal Service
Southeast Area
225 N. Humphreys Blvd.
Memphis, TN 38166-0978

**PART 1—Appellant and Agency Information**

Complete this part regardless of which type of appeal you are filing. Then proceed to Part 2. If you are appealing an agency personnel action or decision, to Part 4; if you are appealing an administrative decision or action affecting your retirement rights or benefits, or to Part 5 if you are filing an IRA appeal, USERRA appeal or VEOA appeal.

*Please type or print legibly.*

**1. Name** *(last, first, middle initial)*

BROWDER, BUTLER B.

**2. Present address** *(number and street, city, State, and Zip code)*
**You must notify the Board in writing of any change in your mailing address while your appeal is pending.**

Address: 4504 SUNNYBROOK DRIVE

City, State, Zip code: MONTGOMERY, AL 36108

**3. Telephone Numbers** *(include area code)* **and E-Mail Address**
**You must notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending.**

Home: 334-281/473  Work: ( ) NONE  FAX: ( )    Other: ( ) 334-2949897 cell

E-mail Address: NONE

**4. Name and address of the agency that took the action or made the decision you are appealing** *(include bureau or division, street address, city, State and Zip code)*

Agency Name: U.S. POSTAL SERVICE

Bureau:

Address: 6701 WINTON BLOUNT BLVD

City, State, Zip code: MONTGOMERY, AL 36119

**5. Your Federal employment status at the time of the action or decision you are appealing:**

[X] Permanent  [] Temporary  [] Term
[] Seasonal  [] Applicant  [] Retired
[] None

**6. Type of appointment (if applicable):**

[] Competitive  [] Excepted
[X] Postal Service  [] SES
[] Other *(describe)*:

**7. Your position, title, grade, and duty station at the time of the action or decision you are appealing (if applicable):**

Occupational Series:      Position Title: MAIL HANDLER
                                                    TECHNICIAN
Grade: PS-05      Duty Station: GMF

**8. Are you entitled to veterans' preference?**
See 5 U.S.C. 2108.

[X] Yes      [] No

**9. Length of Government service (if applicable):**

39 YEARS

**10. Were you serving a probationary or trial period at the time of the action or decision you are appealing?**

[] Yes    [X] No

MSPB Form 185, Page 3 (07/03)
5 C.F.R. Parts 1201, 1208 and 1209

**EXHIBIT 3**

## PART 1 – Appellant and Agency Information (continued)

**HEARING:** You may have a right to a hearing before an administrative judge. If you choose to have a hearing, the Board will notify you when and where it is to be held. If you do not want a hearing, the Board will make its decision on the basis of the submissions of the parties.

11. Do you want a hearing?    [X] Yes          [ ] No

12. I certify that all of the statements made in this form and any attachments are true, complete, and correct to the best of my knowledge and belief.

Signature of Appellant or Representative:                    Date:

_(signature)_                                              8/21/06

## PART 2 – Agency Personnel Action or Decision (non-retirement)

Complete this part if you are appealing an agency personnel action or decision (other than a decision or action affecting your retirement rights or benefits) that is appealable to the Board under a law, rule, or regulation. See 5 C.F.R. 1201.3(a) for a list of appealable personnel actions and decisions. If the personnel action or decision is appealable to the Board, you should have received a final decision letter from the agency that informs you of your right to file an appeal with the Board.

13. Check the box that best describes the agency **personnel action or decision** you are appealing. (If you are appealing more than one action or decision, check each box that applies.) **Attach a copy** of the proposal letter and decision letter (if any). If an SF-50 or its equivalent was issued and is available, attach it now; however, **DO NOT** delay filing your appeal because you do not have an SF-50. You may submit the SF-50 when it becomes available.

[X] Removal                    [ ] Reduction in grade or pay              [ ] Suspension for more than 14 days

[ ] Separation, demotion, or furlough for more than 30 days by reduction in force (RIF)

[ ] Furlough of 30 days or less                              [ ] Termination during probationary period

[ ] Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement

[ ] Negative suitability determination                    [ ] Denial of within-grade increase

[ ] Other action, *describe:*

| 14. Date you received the agency's proposal letter (if any) *(month, day, year)* *(Attach a copy)*: | 15. Date you received the agency's final decision letter (if any) *(month, day, year)* *(Attach a copy)*: | 16. Effective date (if any) of the agency action or decision *(month, day, year)*: |
|---|---|---|
| Feb 2, 2006 | FAD-7-31-06  3/1/2006 | FAD-7-31-06  March 7, 2006 |

17. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

[ ] Yes *(Attach a copy of the agreement)*          [X] No

**PART 2 — Agency Personnel Action or Decision (non-retirement) (continued)**

18. Explain briefly why you think the agency was wrong in taking this action or making this decision.

1. The Agency is not in a position to determine what I do in my off duty time.
2. The Agency did not Follow Progressive discipline Procedures.
3. The violations stated are not violations.
4. The Agency has not acted as such with any other employee.
5. The Agency Authorized me 30 days of Sick for some condition it terminated me

19. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

I seek to be made whole For All losses suffered, ie restoration to position, or position equal to the highest position I could have received had this Action not been Brought. Back Pay AL and SL allotment, Bonuses, Premiums etc.

20. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

[X] Yes             [ ] No

If "Yes," attach a copy of the grievance, enter the date it was filed (month, day, year), and enter the place where it was filed if different from your answer to question 4 in Part 1:

Agency Name: National Postal MailHandlers UNRR    Date Filed: unKnown)

Bureau:

Address: 6701 Winton Blount Bvid

City, State, Zip code: Montgomery AL 36119

If a decision on the grievance has been issued, attach a copy of the decision and enter the date it was issued (month, day, year):

**PART 3 — OPM or Agency Retirement Decision or Action**

Complete this part if you are appealing an administrative decision or action by the Office of Personnel Management (OPM) or a Federal agency affecting your rights or benefits under the Civil Service Retirement System (CSRS) or the Federal Employees Retirement System (FERS). See 5 C.F.R. 1201.3(a)(2). If the decision or action is appealable to the Board, you should have received a final decision from OPM or the agency that informs you of your right to file an appeal with the Board.

21. In which retirement system are you enrolled?

[X] CSRS      [ ] CSRS Offset      [ ] FERS

[ ] Other, describe:

22. Are you a:

[X] Current Employee      [ ] Annuitant

[ ] Surviving Spouse

[ ] Other, describe:

MSPB Form 185, Page 5 (07/03)
5 C.F.R. Parts 1201, 1208 and 1209

**PART 3 — OPM or Agency Retirement Decision or Action (continued)**

| 23. If retired, date of retirement *(month, day, year):*<br><br>*N/A* | 24. Are you appealing an action or decision concerning a retirement coverage error under the provisions of the Federal Erroneous Retirement Coverage Corrections Act (FERCCA)?<br><br>[] Yes            [X] No |
| --- | --- |

25. Describe the retirement decision or action you are appealing.

*N/A*

**Answer either Question 26 OR Question 27, whichever applies to your appeal**

26. If you are appealing an OPM retirement decision, have you received a final or reconsideration decision from OPM?

[] Yes *(Attach a copy)*            [X] No

If "Yes," on what date did you receive the OPM decision *(month, day, year)*?

27. If you are appealing a retirement decision or action by a Federal agency other than OPM, have you received a final decision from that agency?

[] Yes *(Attach a copy)*            [X] No

If "Yes," on what date did you receive the agency decision *(month, day, year)*?

28. Why do you think the decision or action was wrong?

*N/A*

29. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

*N/A*

**PART 4 — Other Claims**

If you completed Part 2 to appeal an agency personnel action or decision, or Part 3 to appeal an administrative decision or action affecting your retirement rights or benefits, you may raise certain other claims in connection with that appeal. Such claims must be raised no later than the close of the conference held to define the issues in your appeal. See 5 C.F.R. 1201.24(b). If you wish to raise any of these claims at this time, check the appropriate box (or boxes) in this part to indicate the claim(s) you are raising. Provide information supporting the claim(s), including any information required by the Board's regulations for the specific type of claim(s) on a separate sheet of paper and attach it to this form. (You need not. You may raise such claims later—but no later than the close of the conference) on your appeal. Remember that you are responsible for proving each claim you raise.

## Answer Question 32 ONLY if you are filing a USERRA appeal

32. Have you previously filed a USERRA complaint with DOL on this matter?   [ ] Yes   [X] No

If "Yes," attach a copy of your USERRA complaint to DOL, provide the information required by the Board's regulations at 5 C.F.R. 1208.13(a) as an attachment to this form, and explain what action you would like the Board to take in this case. If you have received written notice from DOL that your USERRA complaint could not be resolved, attach a copy of the DOL notice. If your USERRA complaint was referred to OSC and OSC declined to represent you, attach a copy of the OSC notice. If OSC is representing you in your USERRA appeal, complete Part 6.

If "No," provide the information required by the Board's regulations at 5 C.F.R. 1208.13(a) as an attachment to this form, and explain what action you would like the Board to take in this case.

## Answer Question 33 ONLY if you are filing a VEOA appeal

33. Have you filed a VEOA complaint with DOL and allowed DOL at least 60 days to try to resolve this matter?   [ ] Yes   [X] No

If "Yes," attach a copy of your VEOA complaint to DOL, provide the information required by the Board's regulations at 5 C.F.R. 1208.23(a) as an attachment to this form, and explain what action you would like the Board to take in this case. If you have received written notice from DOL that your VEOA complaint could not be resolved, attach a copy of the DOL notice and provide the date you received it. If more than 60 days have passed since you filed your VEOA complaint with DOL and your complaint has not been resolved, attach a copy of your notice to DOL stating your intent to appeal to the Board and provide the date you sent it to DOL.

## PART 6—Designation of Representative

Complete this part to designate an organization or a person who has agreed to represent you in your appeal before the Board. If you are representing yourself, do NOT complete this part. By designating a representative, you agree to allow the Board to give your representative all information concerning the appeal. Any changes of this designation must be sent in writing to the MSPB office handling the appeal and to the other party. See 5 C.F.R. 1201.31.

34. Do you wish to designate an individual or organization to represent you in this proceeding before the Board? (You may designate a representative at any time. However, the processing of your appeal will not normally be delayed because of any difficulty you may have in obtaining a representative.)

[ ] Yes *(Complete the information below and sign)*   [X] No

DESIGNATION:

"I hereby designate _____ to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. I understand that any limitation on this settlement authority must be filed in writing with the Board.

| Representative's address *(number and street, city, State and ZIP code).* | Representative's telephone numbers *(include area code)* and e-mail address: |
|---|---|
| Address: | Office: |
| City, State, Zip code: | FAX:          Other: |
|  | E-mail address: |

### SIGN BELOW TO MAKE YOUR DESIGNATION OF REPRESENTATIVE EFFECTIVE

_____
Appellant's Signature

8/21/06
Date

MSPB Form 185, Page 8 (07/03)
5 C.F.R. Parts 1201, 1208 and 1209

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## ATLANTA REGIONAL OFFICE

BUTLER B. BROWDER,

Appellant,

v.

UNITED STATES POSTAL SERVICE,

Agency.

DOCKET NUMBER
AT-0752-06-1072-I-1

DATE: November 8, 2006

## ORDER AND NOTICE OF HEARING AND PREHEARING CONFERENCE

The hearing in this appeal will be held:

Date:     ~~November 28,~~ 2006    *December 5*

Time:     **8:30 a.m.**

Location:   Montgomery, Alabama

### AGENCY PROVIDES SPACE[1]

The agency is **ORDERED** to provide appropriate space for the hearing in **Montgomery, Alabama** and to notify me, appellant's representative, and appellant of the specific location of the hearing by **November 20, 2006**.

If the appellant fails to appear without good cause, the appeal will be decided without a hearing. If the agency representative fails to appear, the hearing will, absent extraordinary circumstances, proceed as scheduled.

---

[1] The undersigned has a strong preference to conduct hearings in a courtroom. Before other arrangements are made, the agency must make every effort to secure a courtroom for this hearing.

**EXHIBIT**
**4**

## PREHEARING SUBMISSIONS

I **ORDER** the agency and the appellant[2] to file the following to be **received** in this office on or before **November 20, 2006**:

(1)    A statement of facts and issues (the appellant must include any and all defenses);

(2)    A list of all agreed upon material facts;

(3)    A list of witnesses with a brief summary of the expected testimony of each witness; and

(4)    A copy of exhibits accompanied by an index identifying the documents. You must separately mark for identification each and every document in the lower right hand corner. The appellant must mark exhibits by letter, the agency by number. Each exhibit exceeding 10 pages in length must be paginated. Documents previously submitted to the Board by either party are already a part of the record and are not to be offered as exhibits. **No binders or notebooks will be accepted.**

NOTE: In presenting evidence at the hearing, you will be limited by your prehearing submissions, except for good cause shown. For example, an unlisted witness will usually not be permitted to testify, and hearing exhibits that were not reviewed during the prehearing conference will usually not be accepted into the record.

## WITNESSES

The agency must provide for the appearance of its employees who are approved as witnesses; thus no subpoenas for them are necessary. If necessary, I will assist you in arranging for the appearance of employees of any other Federal

---

[2] The appellant already submitted a witness list and documentation. If the appellant wishes those submissions to stand as his prehearing submission, he may do so. In any event, the appellant should not file duplicate documents.

3

agency. This assistance may include ordering that agency to make the witness available or issuing a subpoena. To be timely, a motion for subpoena must be received in this office on or before **November 20, 2006**. The requesting party is responsible for serving the subpoena and for paying appropriate witness fees.

## BENCH DECISION

At the close of the hearing, if the AJ is confident in deciding the issues of the case without further review of the record, the AJ may announce findings and conclusions in a "Bench Decision." The AJ will explain the mechanics of such a decision. Either party can request such a decision.

## PREHEARING CONFERENCE

I will conduct a telephonic prehearing conference on **November 21, 2006**, at **10:30 a.m., EST.** Witness requests and hearing exhibits will be reviewed in detail and the facts and issues of the appeal that will be addressed at the hearing will be discussed. Unless otherwise specified, all discovery efforts will terminate on this date. The parties must be prepared, as appropriate, to discuss settlement, to define the issues, and to reach stipulations of uncontested facts. The parties must provide me with a telephone number for the conference call within five calendar days of receipt of this order, if a suitable number is not already included in the appeal record.

NOTE: Since I will discuss settlement options during this conference, representatives must have the authority to settle this appeal or be able to reach the person with that authority on short notice. We may include that person in the conference discussions if I deem it necessary.

FOR THE BOARD:

Stuart A. Miller
Administrative Judge
Phone: (404) 730-2751
Fax:    (404) 730-2767

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail

Butler B. Browder
4504 Sunnybrook Drive
Montgomery, AL 36108

Agency Representative

U.S. Mail

Kathy L. Janowicz, Esq.
United States Postal Service
Memphis Law Department
225 North Humphreys Boulevard
Memphis, TN 38166-0978

November 8, 2006
(Date)

Yvonnie Ellis
Paralegal Specialist

Docket No. AT-0752-06-1072-I-1
Party:        Agency's Representative



Kathy L. Janowicz, Esq.
United States Postal Service
Memphis Law Department
225 North Humphreys Boulevard
Memphis, TN 38166-0978

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
ATLANTA REGIONAL OFFICE

BUTLER B. BROWDER,                           DOCKET NUMBER
                    Appellant,               AT-0752-06-1072-I-1

            v.

UNITED STATES POSTAL SERVICE,                DATE: November 14, 2006
            Agency.

## APPELLANT STATEMENT OF ISSUES

Comes now, the Appellant, Butler B. Browder, who avers that the Agency, U. S. Postal
Service, violated the Appellant's rights with respect to applicable laws, i.e. HIPPA,
FMLA, Title VII, when the Agency denied the Appellant due process of law within its
Administrative processes which resulted in the Appellant being:

1.  Ordered to work while on FMLA (approved).

2.  Disciplined without an investigative interview, on the matters contained in the
    Disciplinary Action.

3.  Disciplined for exercising his rights under FMLA when he did not report as
    instructed on January 10 and January 17, 2006.

4.  Disciplined for a conduct, outside of his normal tour of duty.

5.  Disciplined for exercising his rights when he notified the District Office of
    improper and/or Discriminatory Activity existing in the Montgomery, Al Postal
    Facility (whistle blowing).

6.  Disparately treated in the Disciplinary Process, after he engaged in protected
    activity, as an EEO Complainant and EEO Representative for other Postal
    employees.

7.  The Agency committed harmful error when it proposed to remove the Appellant
    from Postal employment on February 02, 2006, due to issues that did not warrant

(1)


EXHIBIT
5

discipline or removal. This act was committed while the Appellant was on approved FMLA.

8. The Agency denied the Appellant pay while on FMLA from approximately, January 06, 2006 – February 02, 2006.

9. The Agency terminated the Appellant without just cause on March 06, 2006.

10. The agency , also, denied the Appellant rights to privacy with respect to FMLA, when the FMLA Coordinator , MDO, and SDO discussed the Appellant's request for FMLA, during the period of January 05-10, 2006.

11. The Appellant, also, contends that the Agency accelerated and/or truncated the normal disciplinary process when it disciplined the Appellant for three (3) absences and July 19, 2005, then issued a seven (7) day suspension on September 02, 2005 for the same infraction, as indicated in the July 19, 2006 discipline and then subsequently, terminated the Appellant during a period he was protected under FMLA for alleged infractions that were not violations of any Postal rule, regulation or policy.

12. The Agency did not justifiable apply the "Douglass Fact" when it made its determination to terminate the Appellant, a 39 1/2 year Government employee who has contributed much to the Postal Service during his thirty-five (35) years of Postal employment.

13. C. J. Harris, a Black male with no EEO Activity as a Complainant or Complainant Representative was placed on Tour II as MDO for the explicit purpose of harassing and/or removing from Postal employment, the Appellant due to his race because Browder is also Black.

14. Joey Sherman, a Postal Manager who did not have any prior knowledge of Butler Browder, his work habits, education, Postal experience, etc. was selected by Managers employed by the Alabama District U S Postal to issue the Letter of Decision, in order that Butler Browder could not contend, "Reprisals". However, no other employee of the Montgomery, Al GMF has been treated the same.

Respectfully submitted,

_Butler B. Browder_

Butler B. Browder

(2)

## CERTIFICATE OF SERVICE

I, hereby, certify that the enclosed document(s) were serviced VIA first class mail, postage paid, on this _14TH_ Day of _Nov_____, _2006_ to the following person(s):

Stuart A. Miller
Administrative Judge
Merit Systems Protection Board
Atlanta Regional Office
401 West Peach Tree Street, NW
Suite 1050
Atlanta, Ga.


Kathy L. Janowicz
Agency Representative
Attorney
Law Department
United States Postal Service
225 N. Humphreys Blvd.
Memphis, TN  38166-0170
(901) 747-7350
Fax: (901) 747-7371


_11/14/06_____
DATE

_Butler B. Browder_
Butler B. Browder
4504 Sunnybrook Dr.
Montgomery, Al 36108
(334) 281-1473

1
UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
2
ATLANTA REGIONAL OFFICE

3
_____

BUTLER B. BROWDER,        )
4                          )
         APPELLANT,        )
5                          )
V.                         )  NO. AT-0752-
6                          )      06-1072-I-1
UNITED STATES             )
7  POSTAL SERVICE,         )
                           )
8        AGENCY.           )

9
_____

10         TELEPHONIC STATUS CONFERENCE/
                SETTLEMENT TERMS
11
              DECEMBER 4, 2006
12
13
14
15
16
17
18
19
20               COPY
21
22
23     LORI CUSHING, TRANSCRIPTIONIST
       ALPHA REPORTING CORPORATION
24           236 ADAMS AVENUE
         MEMPHIS, TENNESSEE 38103
25             901.523.8974

EXHIBIT
6

2

```
1              A P P E A R A N C E S

2

     STUART A. MILLER, PRESIDING
3
     BUTLER BROWDER,
4    APPELLANT PRO SE

5    KATHY O. JANOWICZ, ESQUIRE,
     ATTORNEY FOR THE AGENCY
6

7    ALSO PRESENT:

8    JESSIE LEONARD, UNION PRESIDENT

9    ANGELA CRENSHAW, UNION OFFICER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                   I N D E X

 2

 3                                       PAGE

 4    TELEPHONIC STATUS CONFERENCE......   4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
 1              P R O C E E D I N G S

 2              MR. MILLER:  Status conference

 3    in the case of Butler B. Browder versus the

 4    United States Postal Service, Docket No.

 5    AT-0752-06-1072-I-1.

 6              Present and participating on this

 7    telephonic conference has been Mr. Butler

 8    Browder, the Appellant pro se, and Ms.

 9    Kathy O. Janowicz, Esquire, for the Agency.

10              Also present at this time at the

11    request of Ms. Janowicz are Mr. Jessie

12    Leonard, President of the applicable union,

13    and Ms. Angela Crenshaw, an officer in that

14    union.

15              The parties have informed me that

16    they have reached a settlement in this

17    case, and they have given me the terms, and

18    I will now read the terms into the record.

19              The first:  The parties agree that

20    this is a no-fault settlement agreement.

21    By entering this -- into this agreement,

22    neither party admits fault or any

23    wrongdoing for the matters associated with

24    the appeal of the appellant's removal.

25              Secondly, the parties agree that they
```

5

1    enter into this agreement voluntarily and

2    that there has been no duress or coercion

3    brought upon either party to settle this

4    appeal.

5          Lastly, thirdly, the parties agree

6    that they wish the settlement made part of

7    the record before the MSPB for

8    enforcement's purposes.

9          Fourth, the Agency agrees that it

10   will rescind the removal action of which

11   the subject of this appeal, which will

12   reverse any pay adjustment, which clears

13   the letter of demand issued by the Agency

14   on the Appellant.

15         The Appellant will be permitted to

16   use all accrued sick leave beginning with

17   the last date he was in a pay status prior

18   to the removal action and up and until that

19   sick leave is exhausted.

20         The Appellant agrees to retire

21   effective the first date after his sick

22   leave is exhausted.  During the period that

23   the sick leave is being used, obviously,

24   the Appellant will -- will accrue more sick

25   leave and annual leave, which sick leave

6

```
 1    will be rolled into this exhaustion; annual

 2    leave will be part of a cash award to be

 3    discussed in a minute.

 4         The Appellant will also be credited

 5    with any holiday pay that would have

 6    accrued during the period when -- since his

 7    -- the effective date of his removal and

 8    the use of the sick leave until its

 9    exhaustion and retirement date.

10         If there is a mechanism available to

11    the Agency, the Agency agrees it will

12    deposit 90 percent of the sick leave

13    payment due the Appellant into the

14    Appellant's thrift savings plan account.

15    If no such mechanism is available, the

16    Agency will issue a check or checks to the

17    Appellant to cover the exhaustion of the

18    sick leave described previously.

19         The Appellant will receive pay for

20    any unused annual leave, to include leave

21    accrued during the period of sick leave

22    exhaustion.

23         The Agency agrees to pay the

24    Appellant compensatory damages in the lump

25    sum amount of $3,000.  "Lump sum" means
```

7

1    there will be no deductions.  The Appellant

2    must take care of any tax consequences of

3    that payment on his own.

4        The parties agree, also, that this

5    settlement encompasses and also settles any

6    and all pending MSPB cases filed by the

7    Appellant, all pending individual EEO

8    complaints and cases filed by the

9    Appellant, and all pending grievances

10   individual filed by the Appellant.

11        The agreement specifically excludes

12   the Appellant's participation in a pending

13   class action suit filed with the Equal

14   Employment Opportunity Commission.

15        Those are all the terms as I got

16   them.

17        Would that be correct, Ms. Janowicz?

18           MS. JANOWICZ:  Yes, sir.

19           MR. MILLER:  Are those all the

20   terms, Mr. Browder?

21           MR. BROWDER:  Yes.

22           MR. MILLER:  All right.

23       Mr. Browder, you do agree voluntarily

24   to this appeal (sic) -- to this settlement?

25           MR. BROWDER:  Yeah.

8

```
 1              MR. MILLER:  Okay.

 2         And because it involves union

 3    grievances at the same time, Mr. Leonard,

 4    you agree for the union to the settlement?

 5              MR. LEONARD:  (No verbal

 6    response indicated).

 7              MR. MILLER:  Mr. Leonard?

 8              MR. LEONARD:  Yes, yes.

 9              MR. MILLER:  Okay.

10         Ms. Crenshaw, do you agree on behalf

11    of the union?

12              MS. CRENSHAW:  Yes, sir.

13              MR. MILLER:  Okay.

14         I find that the settlement agreement

15    and all of its terms are legal.  Therefore,

16    I will accept the settlement into the

17    record for purposes of enforcement.

18         This tape-recording will constitute

19    the official settlement between the

20    parties.

21         I will have a copy of it made and

22    sent to the Agency, who can then have it

23    transcribed so everyone in concern can have

24    a written copy of the transcript of the

25    settlement, but that is not a requirement
```

9

1    for this case being settled.  The

2    tape-recording is the official settlement.

3          Do all the parties agree?

4          Ms. Janowicz?

5                MS. JANOWICZ:  Yes, sir.

6                MR. MILLER:  Mr. Browder?

7                MR. BROWDER:  Yes, sir.

8                MR. MILLER:  Okay.

9          Therefore, I will now stop the tape

10   recording and then conclude this

11   conference.

12         Today's date, I forgot to mention, is

13   December -- December 4th, 2006, and my name

14   is Stuart A. Miller.

15               (END OF RECORDING)

16

17

18

19

20

21

22

23

24

25

10

```
1            TRANSCRIPTIONIST'S CERTIFICATE
2      STATE OF TENNESSEE
       COUNTY OF SHELBY
3
           I, Lori Cushing, Legal
4      Transcriptionist, do hereby certify:
5          The foregoing was recorded and given
6      to me for transcription.
7          Being a transcriptionist, I then
8      transcribed the recording, and to the best
9      of my ability, the foregoing pages contain
10     a transcript of said recording then and
11     there taken.
12         I am not in the employ of, nor am I
13     related to, any of the parties or their
14     agent(s), and I have no interest in the
15     matter involved.
16         Witness my signature this the 13th day
17     of December, 2006.
18                         Lori Cushing
19                         LORI CUSHING
20
           SWORN TO and subscribed before me this
21     13th day of December, 2006.
22                         DanaMwebb
23                         Notary Public
24
       My Commission Expires:
25
```

DANA M. WEBB
NOTARY
PUBLIC
AT
LARGE
SHELBY
MY COMMISSION EXP. 5-20-08

### UNITED STATES OF AMERICA
### MERIT SYSTEMS PROTECTION BOARD
### ATLANTA REGIONAL OFFICE

BUTLER B. BROWDER,
               Appellant,

DOCKET NUMBER
AT-0752-06-1072-I-1

v.

UNITED STATES POSTAL SERVICE,
               Agency.

DATE: December 4, 2006

Butler B. Browder, Montgomery, Alabama, pro se.

Kathy L. Janowicz, Esquire, Memphis, Tennessee, for the agency.

### BEFORE
Stuart A. Miller
Administrative Judge

### INITIAL DECISION

On or about August 21, 2006, the appellant timely filed an appeal with the Board from the agency's July 31, 2006 decision on his discrimination complaint regarding the agency's action removing him from his position of Mail Handler, General Mail Facility (GMF), Montgomery, Alabama, effective March 7, 2006. For the reason set forth below, the appeal is hereby DISMISSED.

The day prior to the commencement of the hearing, December 4, 2006, I was notified by telephone that the parties reached a settlement in this appeal; the terms of the settlement were read into the record by recording on tape. Appeal File, Tab 12. The agreement reflects that the parties understand the terms of the agreement and have entered into the agreement voluntarily. *See Mahoney v. United States Postal Service*, 37 M.S.P.R. 146, 149 (1988). Moreover, having

**EXHIBIT**
**7**

reviewed the agreement, I find that it is lawful on its face. *See Aragon v. Department of Transportation*, 11 M.S.P.R. 208, 209 (1982).

I further find that the settlement resolves a matter over which the Board has jurisdiction. 5 U.S.C. §§ 7511(a)(1)(B), 7512(1), and 7513(d). Therefore, at the request of the parties, the agreement has been made a part of the record. *See Sekerak v. Railroad Retirement Board*, 74 M.S.P.R. 260, 262 (1997).

As a result of the settlement, the appellant agrees to withdraw his appeal. Thus, the agreement removes the matter from the Board's jurisdiction. *See Clark v. Department of the Treasury*, 9 M.S.P.R. 48, 49 (1981). Nonetheless, the Board retains jurisdiction for the limited purpose of considering any enforcement or compliance issues that may arise under the settlement agreement. *See Miller v. Veterans Administration*, 23 M.S.P.R. 410, 412 (1984).

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:

Stuart A. Miller
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **January 8, 2007,** unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date

on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review if you believe that the settlement agreement is unlawful, was involuntary, or was the result of fraud or mutual mistake. Your petition, with supporting evidence and argument, must be filed with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you claim that you received this decision more than five days after its issuance, you have the burden to prove to the Board the date of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is

4

determined by the postmark date. The date of filing by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j).

### JUDICIAL REVIEW

If you are dissatisfied with the Board's final decision, you may file a petition with:

> The United States Court of Appeals
> for the Federal Circuit
> 717 Madison Place, NW.
> Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be <u>received</u> by the court no later than 60 calendar days after the date this initial decision becomes final.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, <u>http://www.mspb.gov.</u> Additional information is available at the court's website, <u>http://fedcir.gov/contents.html</u>. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and Forms <u>5</u>, <u>6</u>, and <u>11</u>.

### ENFORCEMENT

The settlement agreement has been made part of the record. If you believe there has not been full compliance with the terms of the agreement after this initial decision becomes final, you may ask the Board to enforce the agreement by filing a petition for enforcement with this office.

5

Your petition for enforcement must describe specifically the reasons why you believe there is noncompliance. It must include the date and results of any communications regarding compliance, and a statement showing that a copy of the petition was either mailed or hand-delivered to the agency.

Any petition for enforcement must be filed within a reasonable period of time after you discover the asserted noncompliance. If you believe that your petition is filed late, you should include a statement and evidence showing good cause for the delay and a request for an extension of time for filing.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

U.S. Mail

Butler B. Browder
4504 Sunnybrook Drive
Montgomery, AL 36108

<u>Agency Representative</u>

U.S. Mail

Kathy L. Janowicz, Esq.
United States Postal Service
Memphis Law Department
225 North Humphreys Boulevard
Memphis, TN 38166-0978

December 4, 2006
(Date)

Yvonnie Ellis
Paralegal Specialist

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### ATLANTA REGIONAL OFFICE

| | | |
|---|---|---|
| **BUTLER B. BROWDER,** | ) | **DOCKET NUMBER** |
| **Appellant,** | ) | **AT-0752-06-1072-I-1** |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES POSTAL SERVICE,** | ) | **Date: December 04, 2006** |
| **Agency.** | ) | |

Comes now, the Appellant, Butler B. Browder, Pro Se, in the above captioned case, who requests that the Settlement Agreement , as placed before your Honor on December 04, 2006, relative to this case be set aside.

The Appellant apologizes to all parties concerned or involved. However, the Appellant feels, strongly, that the infractions to which he has been subjected, which resulted in his removal from the Postal Service are totally erroneous.

I have tried to reconcile with myself about the issues involved in this case and the Settlement. I am unable to do so.

I, hereby, respectfully request that a hearing be scheduled in the above captioned case.

I am deeply sorry for the inconvenience.

I am,

Butler B. Browder

**EXHIBIT 8**

06 08:23p     BUTLER BENJAMIN BROWDER     (334) 280-5769          p.1

## CERTIFICATE OF SERVICE

I, hereby, certify that the enclosed document(s) were serviced VIA fax,  on this 4th Day of _December, 2006 to the following person(s):

Stuart A. Miller
Administrative Judge
Merit Systems Protection Board
Atlanta Regional Office
401 West Peach Tree Street, NW
Suite 1050
Atlanta, Ga.
FAX: (404) 730-2767

Kathy L. Janowicz
Agency Representative
Attorney
Law Department
United States Postal Service
225 N. Humphreys Blvd.
Memphis, TN  38166-0170
(901) 747-7350
Fax: (901) 747-7371

_12/4/06_
DATE

Butler B. Browder
4504 Sunnybrook Dr.
Montgomery, Al 36108
(334) 281-1473

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON, DC**

| | | |
|---|---|---|
| **BUTLER B. BROWDER,** | ) | **DOCKET NUMBER** |
| **Appellant,** | ) | **AT-0752-06-1072-I-1** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES POSTAL SERVICE,** | ) | |
| **Agency.** | ) | |
| | ) | **Date:  January 9, 2007** |

**DECLARATION OF E. DIANA CHABOT**

I, E. Diana Chabot, make the following declaration in lieu of an affidavit, as permitted by 28 U.S.C. § 1746.  I am aware that this declaration will be filed with the Merit Systems Protection Board, and that it is the legal equivalent of a statement under oath.

1. I have been employed by the U.S. Postal Service since 1989.  I have worked in the Law Department for the Southeast Area of the U.S. Postal Service in Memphis, Tennessee, since 1994.  For the last 13 years, I have worked as a Legal Secretary or Administrative Assistant in the Law Department.

2. On December 8, 2006, I transcribed a telephone voicemail message that had been left by Butler Browder on December 4, 2006, at 5:48 p.m. on the telephone voicemail of Kathy L. Janowicz, an attorney in the Law Department.

3. Following is information related to this message, including the contents of Mr. Browder's message to Ms. Janowicz:

**EXHIBIT**
**9**

DATE OF TELEPHONIC MESSAGE:     MONDAY, DECEMBER 4, 2006
TIME OF MESSAGE:     5:48 P.M.
CALLER:     BUTLER BROWDER

"Kathy this is Butler Browder. I have been . . . this settlement has been on my mind all day or all afternoon, and I don't agree with it at all. I have called the Judge to see if I can vacate it. I would appreciate your call as soon as possible. I don't like it – so you can call me back."

\*        \*        \*        \*        \*

I have read the above two (2) pages, and I declare under penalty of perjury that the information stated herein is true and correct to best of my knowledge.

Dated this _____ 9th _____ day of January, 2007.

E. DIANA CHABOT
Administrative Assistant
Law Department
U.S. Postal Service
225 N. Humphreys Blvd.
Memphis, TN 38166-0170

2

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

BUTLER B. BROWDER,                           **DOCKET NUMBER**
    Appellant,                           AT-0752-06-1072-I-1

    v.

UNITED STATES POSTAL SERVICE,                Date: December12, 2006
    Agency.

Comes now, the Appellant, Pro Se, who hereby request a Board Review of the initial decision in that the Settlement Agreement:
1. WAS NOT entered into voluntarily but WAS coerced.
2. WAS a mutual mistake, in that the Appellant nor his representative understood that the Settlement Agreement was binding on any party until and unless the same was reduced to writing and signed by all consenting parties.

1.   <u>Settlement Not Voluntarily Entered Into by the Appellant</u>.
On November 28, 2006, a Pre-hearing Conference was held by Order of the Administrative Judge between the Appellant, Butler Browder and Agency Representative, Kathy Janowicz.   In that Conference, the Administrative Judge asked if Settlement Talks had been entered into in this case.   Attorney Janowicz described the terms of that Agreement which were virtually the same as those tentatively agreed upon on December 04, 2006.   The exception was that the Compensatory Damages were reduced from five thousands ($5,000.00) to three thousands ($3,000.00)

The Appellant rejected this offer, explaining to the Judge why theses terms were unacceptable.   My explanation was simply that I was  not guilty and even if I was determined to be guilty, that the penalty was too harsh and not in line with the Agency's agreed upon Disciplinary Processes.   Further, that I intended to work six (6) more years.

On the morning of December 04, 2006, I was told by a Postal employee that the

1

EXHIBIT
10

Union had lost my Arbitration Case which related to same matter. I called the Union's President who validated this fact. I, then, told the Union President, that I would apply for my retirement as I continue to appeal the decision in this matter and my EEO Complaints.

I completed the retirement forms which I has already requested from Shared Services. As I had completed the forms and was about to walk out of the door to go to the Post Office to mail the Documents, the telephone rang. It was the Union President who stated that he was in talks with the Agency's Representative, who had offered the reduced Settlement, which had to be acted upon within the hour, in that the Administrative Judge was leaving for Montgomery relative to this Case within the hour. I declined the offer. In a very short time span, the Union President called. Again. This time, the Regional Union Representative was on a Conference Line with us. They explained to me that if I did not accept the offer that my retirement would be contested by the postal service. Further that, the Grievance Decision was binding and could not be appealed to any one. Further, that the POSTAL service would introduce the Grievance Decision in my EEO Complaint which would more than likely be upheld by the Administrative Judge In the EEO Case before the merit Systems Protection Board.

While I am unsure about the Agency's right to contest my retirement, I believed that which I was told in that when I was removed from the Postal Service, I was given the right to apply for unemployment compensation. When I applied, I was denied the compensation because the Agency told Unemployment Compensation that I had voluntarily resigned my position when I did not report for duty on January 10, - January 17, 2006, even though I was on approved FMLA.

I have, therefore, been unemployed and without any income for the past nine (9) or so months. My savings and most of my investments have, at this point, been dissolved. I had little or or no recourse than to accept a lesser offer than that previously offered. I feel that the Agreement was therefore not voluntary.

Further, the Administrative Judge knew from previous conversations with the parties on November 28, 2006 that I was totally against the Proposed Settlement when it was represented more than at that time. He should have been reasonably suspect of the voluntary nature of the Settlement.

2.  <u>The Settlement Represented A Mutual Mistake.</u>
    During the Conversation with the Union President, discussions were had as to

2

when the Settlement was to become effective.   The mutual understanding was that all parties would have to sign off on the agreed upon matter.  This would allow me time to determine if my retirement could be challenged by the Postal Service.  A call has been placed to Shared Services and a message left by me in regard to this matter.

In a matter of a few minutes, I talked to the Union President, who I asked to send me a copy of the Grievance Decision.  After reading the Decision , I called the President to discuss the Decision.  At this time, he told me that the Arbitrator was a former Postal Attorney who had issued many unfavorable decision; that this Arbitrator was possible hand picked by the Agency  to hear my Case due to his ties with Regional/District Postal Mangers; that this Arbitrator would not be selected by any of the Unions to serve as an Arbitrator, in the future;  that, although the reason for denying my grievance was not advanced at Arbitrator Hearing, it was the same as had been advanced by a Regional/District Agency Official.

As soon as I learned all of these facts ( a few hours) I  Called the Administrative Judge and left him a message to disregard the Proposed Settlement Agreement. He could not be reached.

The same day, December 04, 2006, I faxed  a signed motion to set aside this Settlement ,to the Administrative Judge and Agency Representative.

The following morning, I reported to the place where the Hearing was to be held. I received a call from the Judge who stated that there was nothing that he could do..  The Settlement was binding on all parties.  I asked what I could do .  He told me to talk to the Agency and/or appeal his decision once I had received it.  I told him that the Settlement was not voluntary , in that  I was in fear of loosing my retirement of thirty-nine (39) years Government  employment.

At all time prior to being told by the Administrative Judge, that the telephonic Settlement talks constituted a binding settlement, my representatives and I believed that this conversation would be treated as any other Alternative Resolution Dispute matter would necessitate a written and signed Agreement before such a Settlement could become binding.

In fact, the Branch President called me at home, after the Settlement talks had concluded.  She asked me when I would be available to sign the Agreement.

I hereby and therefore seek to have this case reopened and remanded to the Merit Systems Protection Board. Regional for a Hearing.

3

I am:

**Butler B. Browder**

## Statement under the Penalty of Perjury of Jessie Leonard.

I would like to make the following statement of my own free will:

On December 4, 2006, I informed Mr. Butler Browder that his Arbitration, concerning his removal, was denied by Arbitrator Thomas Pigford and that he went totally against our arguments. This was totally a surprise to me as with Mr. Butler Browder.

At that time, I was concerned that the Arbitration decision was binding and would be used against Mr. Browder in is MSPB hearing, which was scheduled for December 5, 2006. I was also concerned that this decision would abort Mr. Browder rights to retirement.

I informed Mr. Browder that it grieved me to witness an employee of 35+ years of Postal employment loose everything. I then ask Mr. Browder if I can contact the Agency to try and setup settlement talks between the two parties.

I proceeded to do so upon contacting the Agency Attorney. Although I wasn't the designated representative for Mr. Browder in his MSPB complaint, I asked if the Agency would be willing to engage in settlement talks of the December 5, 2006, MSPB case.

The Agency agreed and informed me that Judge Miller was leaving his office within an hour and that we needed to conclude our talks prior to the Judge leaving his office. After a brief conference with the Agency Attorney, the Agency offered Mr. Browder a previous agreement, which he had preciously denied, minus $2,000.00.

I then contacted Mr. Browder and informed him of the settlement offer. Mr. Browder wasn't pleased with the settlement offer; however, he reluctantly agreed to a teleconference with the Agency Attorney and Judge Miller.

During the course of the teleconference, Judge Miller informed Mr. Browder that the conference was being recorded and will become apart of the official records, or something to that affect.

The teleconference proceeded and the proponents of the agreement were read into the official records by the Agency Attorney. Judge Miller asked Mr. Browder if he agreed with the terms and Mr. Browder wanted some language and/or clarification and upon clarification, Mr. Browder reluctantly replied, yes.

1

It has been my experience that an agreement is not binding until such time as that particular agreement is reduced to writing and signed by the consenting parties. As of this writing, I have not received a written agreement nor have I been afforded the opportunity to sign such document.

Once the conference concluded, Mr. Browder called me and asked for a copy of the Arbitration Award, concerning his case. I faxed Mr. Browder a copy of the award around 4:15p.m.

Subsequently, Mr. Browder called again after reading the Award and stated that, "he did not believe that the MSPB or the Federal Courts would go along with this Arbitration decision". Mr. Browder then informed me that he wouldn't sign or take party to the settlement agreement and that he was going to proceed with the MSPB hearing.

**End Statement**..........................................................................................

Jessie Leonard

2

## CERTIFICATE OF SERVICE

I, hereby, certify that the enclosed document(s) were serviced VIA mail on this 19th Day of December, 2006 to the following person(s):

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419


Kathy L. Janowicz
Agency Representative
Attorney
Law Department
United States Postal Service
225 N. Humphreys Blvd.
Memphis, TN 38166-0170
(901) 747-7350
Fax: (901) 747-7371


_12/14/06_
DATE

Butler B. Browder
4504 Sunnybrook Dr.
Montgomery, Al 36108
(334) 281-1473

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MAR 1 2 2007

BUTLER B. BROWDER,
                Appellant,

          v.

UNITED STATES POSTAL SERVICE,
                Agency.

DOCKET NUMBER
AT-0752-06-1072-I-1

DATE:

Butler B. Browder, Montgomery, Alabama, pro se.

Kathy L. Janowicz, Esquire, Memphis, Tennessee, for the agency.

### BEFORE

Neil A. G. McPhie, Chairman
Mary M. Rose, Vice Chairman
Barbara J. Sapin, Member

### FINAL ORDER

The appellant has filed a petition for review in this case asking us to reconsider the initial decision issued by the administrative judge. We grant petitions such as this one only when significant new evidence is presented to us that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation. The regulation that establishes this standard of review is found in Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

After fully considering the filings in this appeal, we conclude that there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome. 5 C.F.R. § 1201.115(d).

EXHIBIT
H

2

Therefore, we DENY the petition for review. The initial decision of the administrative judge is final. This is the Board's final decision in this matter. 5 C.F.R. § 1201.113.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the court no later than 60 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the

3

court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.


FOR THE BOARD:

Bentley M. Roberts, Jr.
Clerk of the Board

Washington, D.C.

## CERTIFICATE OF SERVICE

I certify that this Order was sent today to each of the following:

Certified Mail

Butler B. Browder
4504 Sunnybrook Drive
Montgomery, AL 36108

U.S. Mail

Kathy L. Janowicz, Esq.
United States Postal Service
Memphis Law Department
225 North Humphreys Boulevard
Memphis, TN 38166-0978

March 6, 2007
(Date)

Tori Stewart
Paralegal Specialist

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**OFFICE OF FEDERAL OPERATIONS**
P. O. BOX 19848
WASHINGTON, D.C. 20036-9848

IN THE MATTER OF:                        )
                                         )
BUTLER B. BROWDER, JR                    )        AGENCY #1-H-361-0004-06
                                         )        MSPB DOCKET NO
                                         )        AT-0752-06-1072-I-1
Complainant,                             )
                                         )
                                         )
                         v.              )
                                         )
JOHN E. POTTER                           )
                                         )
Postmaster General                       )
                                         )
U S POSTAL SERVICE                       )

APR 1 7 2007

## APPEAL

Come Now the appellant Butler B. Browder, pro se in the above captioned case who hereby appeals the MSPB decision to dismiss the case as style above for the following stated reasons:

1. The settlement agreement was not voluntary but coerced. see attached complainant appeal to MSPB.
2. A mutual mistake existed in that the union nor the complainant thought that a signed settlement was not needed to bind this agreement.
3. The agreement constitutes fraud and a misinterpretation of the law, rule and regulations of the U.S. Postal Service. And that sick leave usage is allowed without documentation to settle the case but sick leave was denied which cause this complaint in the first place.

In support of these claims the appellant re/submits the Appeal made to the Board regarding the initial decision of the Administrative Judge. The Appellant Appeals to the Commission in this matter because a review to the Court of Appeals would negate the purpose for which this case was filed (Discrimination) further that the Commission and the US District Court had exclusive rights to decide matter of Discrimination and therefore have exclusive jurisdiction in instance case.

**EXHIBIT**
**12**

Please find attach initial decision , final decision of the MSPB Board and Appeals thereto by the complainant.

The complainant prays that the Commission would overturn this decision and permit the complainant to proceed with the merits of the case.


Signed by,

Butler B. Browder

## CERTIFICATE OF SERVICE

I, hereby, certify that the enclosed document(s) were serviced VIA first class mail, postage paid, on this _13TH_ day of _April_ , _2007_ to the following person(s):

Equal Employment Opportunity Commission
OFFIC OF FEDERAL OPERATIONS
P.O.BOX 19848
WASHINGTON D.C.20036-9848

Kathy L. Janowicz
Agency Representative
Attorney
Law Department
United States Postal Service
225 N. Humphreys Blvd.
Memphis, TN 38166-0170
(901) 747-7350
Fax: (901) 747-7371

_4/13/07_
DATE

Butler B. Browder
4504 Sunnybrook Dr.
Montgomery, Al 36108
(334) 281-1473

1 of 5 DOCUMENTS

Butler B. **Browder,** Petitioner, v. John E. Potter, Postmaster General, United States Postal Service, Agency

MSPB No. AT0752061072I1 Petition No. 0320070068

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

2007 EEOPUB LEXIS 1947

May 15, 2007

**ISSUEDBY:** [*1] For the Commission by Carlton M. Hadden, Director, Office of Federal Operations

**OPINION:**

DENIAL OF CONSIDERATION

Petitioner filed a petition with the Equal Employment Opportunity Commission asking for review of a Final Order issued by the Merit Systems Protection Board (MSPB) concerning his claim of discrimination.

Petitioner filed an EEO complaint alleging discrimination based on race (Black) and reprisal when he was removed from his mail handler position on the charges of improper conduct, failure to follow instructions, failure to follow agency leave requesting procedures, and failure to maintain a regular work schedule. The agency issued a final agency decision finding no discrimination. Petitioner then filed the instant appeal with the MSPB raising his individual claims of discrimination. However, on December 4, 2006, the MSPB dismissed the matter because petitioner entered into a settlement agreement with the agency. Petitioner alleged he was coerced to sign the settlement agreement and filed a petition with the Board. The Board upheld the dismissal. Neither the initial decision nor the Board's decision gave petitioner appeal rights to the Commission.

EEOC regulations provide that [*2] the Commission has jurisdiction over allegations of discrimination raised in connection with an action appealable to the MSPB. 29 C.F.R. § 1614.302. Here, the MSPB dismissed the matter because petitioner entered into a settlement agreement. The Commission has no jurisdiction over procedural matters of the Board. Because the MSPB did not address any matters within the Commission's jurisdiction, the Commission has no jurisdiction to review petitioner ' s case. Further, the Commission has no jurisdiction over settlement agreements entered into before the Board. Consequently, the Commission denies the petition for review.

**LOAD-DATE:** May 30, 2007

EXHIBIT
13

# EQUAL EMPLOYMENT OPPORTUNITIES COMMISSION
## OFFICE OF FEDERAL OPERATIONS
### P.O. Box 19848
### Washington, D.C. 20036-9848



JUN − 1 2007

IN THE MATTER OF
BUTLER B. BROWDER, JR
**Appellant/Petitioner**
        v.
JOHN E. POTTER, POSTMASTER GENERAL
U.S. POSTAL SERVICE
**Agency, Respondent**

**Agency #1-H-361-0004-06**
**MSPB  #AT0752061072T1**
**Petition #032070068**

## MOTION FOR RECONSIDERATION

Comes now the complainant/appellant in the above EEOC complaint who requests your reconsideration and revocation of your **denial of consideration,** in that:

1) It represents an erroneous interpretation of law, and
2) It misrepresents the facts in the instant case.

## BACKGROUND

Upon receipt of the personnel action which led to the filing of this complaint, the complainant was issued rights to file a MSPB Appeal, or EEOC complaint/grievance, etc. The complainant elected to file an EEOC complaint (Case #1-4-361-0004-06). The Union subsequently filed a grievance in which the agency's action was upheld by an arbitrator prior to the alleged settlement agreement being entered into on December 4, 2006.

**EXHIBIT**
**14**

Page 2
Complaint
B.B. Butler


The EEOC complaint was processed in accordance with standard EEOC procedures until it reached the hearing stage. The complainant was then given appeal rights to the MSPB for hearing purposes. All during this process, the agency had consistently offered to settle this complaint with retirement rights, use of sick leave rights, and as much as $10,000.00 compensatory damages. These offers were rejected by the complainant. On December 4, 2006, the eve of the day the MSPB hearing was to be held, the union President called the complainant and apprised him of the fact that the arbitrator had ruled against him. The complainant then advised the union President that he would immediately submit his retirement papers.

Subsequently, the union called the complainant and advised him that the Postal Service had made an offer to settle the MSPB case for essentially $7,000.00 less than they had previously offered. They also advised complainant that this offer was only good for "the next hour or so." Further, that if the complainant did not settle, the Postal Service would contest complainant's retirement based on the arbitrator's decision, which was not subject to further review by anyone and was, in fact, binding on all parties. (These facts, though stated, are not factual. The agency could not contest the complainant's retirement.)

The complainant told the union that he was going to go on and retire. The union representative stated, "I hate to see an employee of 39 years lose everything."

After a few minutes, the union and the Postal Service called the complainant back. The complainant was headed out to mail his retirement papers that he had previously gotten in case these events took place. The Postal Service attorney called the AJ of MSPB, who recorded the conversation.

After the conversation had concluded between the parties, the union called the complainant to see when he would be available to sign off on the tentative settlement agreement. The complainant told the union that he would not sign.

The complainant then called the MSPB AJ, who was out of the office. The complainant relayed to the MSPB AJ that he could not go along with the proposed settlement and would be at the hearing site the following day, as previously scheduled.

Page 3
Complaint
B.B. Butler

The following morning, while at the federal court hearing site, the complainant received a call from the AJ, who informed him that there was nothing he could do. The AJ continued by informing the complainant that he would receive appeal rights with his decision.

As previously planned, the complainant submitted his retirement papers, which were accepted effective on or about March 6, 2005. The complainant has been deemed retired for the entire period following that date.

The alleged December 4, 2006 settlement included a provision which would have allowed use of the complainant's sick leave, which would have placed the complainant's retirement at August, 2005. To this date, no changes have occurred on the March 6, 2005 date. Therefore, the agency has not implemented the condition of the alleged settlement. No other provision of that proposed agreement has been implemented by the agency to this date (approximately 6 months).

Once the appeal rights were received, they stated three criteria for appeal. The availability or introduction of **new evidence** was not listed as a reason or requirement for review or appeal.

The complainant appealed the initial decision, which was rejected by the Board because it did not contain **new evidence**.

The Board issued **Reviews Rights** to the Federal Court of Appeals. Along with this decision, which contained the **Reviews Rights**, the Board sent a document entitled, <u>A Guide For Pro Se Petitioners' Filing Petitions for Review of Merit System Protection Board Decisions</u>. On Page 2, Item 6 of this document, the following is stated:

6. **Discrimination claims in Merit Systems Protection Board cases**
   **If you petition the court for review, you must complete the Federal Circuit Rule 15© form included herein. If you fail to complete and return the 15© form within 14 days after the date of docketing of your petition for review, the clerk of the court will dismiss your case.**
   **The court does not have jurisdiction to review cases involving bona fide claims of discrimination based on race, color, religion, sex, national origin, age, and disability that were raised before and considered by the MSPB. If your case involved such claims and you are unwilling to abandon the discrimination claims forever, you must proceed in a district court or the Equal Employment Opportunity Commission.**

Page 4
Complaint
B.B. Butler

**6. (cont.)**

In order to proceed in the court in a case involving discrimination, you must waive your discrimination claims on the 15© form. A discrimination claim raised for the first time in the court does not affect the jurisdiction of the court to decide the issues raised before the MSPB.

In that the complainant did not wish to abandon his discrimination claim, which was the subject of his MSPB claim, he appealed the action to the Office of Federal Operations, as mandated by the enclosed/attached documents.

The complainant believes that appeal rights are thereby justifiably relayed to the EEOC or a district court while review rights are relayed to the Federal Court of Appeals. Thus, the EEOC does have jurisdiction in such matters as presented in this case.

## ARGUMENTS

I.    The OFO's denial of consideration represents an erroneous interpretation of law.

    A.    The Commission does have jurisdiction over all matters involving a complaint of discrimination.

    B.    The complainant was issued appeal rights to the OFO, EEOC.

    C.    The appeal to the OFO was not a petition for review, but rather an appeal of an EEOC complaint.

II.   The OFO's denial of consideration in this matter misrepresents the facts of this case.

    A.    The alleged settlement of December 4, 2006, was never reduced to writing and signed by the parties. The complainant has been involved with EEOC and contract negotiations with the Postal Service since 1970. During that time, no agreement has been binding on either party until it was signed by the parties. Further, the complainant is a trained, certified and court registered mediator. All of his training and experience dictates that anything not signed by the parties has no standing beyond that forum.

Page 5
Complaint
B.B. Butler

A. (cont.)
And most notably, it was the understanding of the union President and the complainant that this settlement talk would require subsequent signing by the parties.

B. The agency has stated to the MSPB and EEOC that it talked to the union because union issues existed in the instant case. This could not be further from the truth. (See Jessie Leonard's statement attached to my previous submission.) This statement reveals that he initiated contact with the agency because he "(did) not want to see an employee of 39 years lose everything."

Further, the union had exhausted its remedies when the arbitration case was decided prior to December 4, 2006. At all times during the EEOC MSPB process, the complainant has represented himself. The complainant did not indicate t the agency or MSPB that Jessie Leonard was representing him in the case.

Therefore, the agency breached the complainant's rights to privacy when it discussed the matter with the union. The agency had already been rejected by the complainant on a settlement offer which constituted $7,000.00 more than the offer it proposed to the union.

## CONCLUSION

For the aforementioned reasons, the complainant/appellant respectfully requests that OFD reconsider its decision of May 15, 2007 and allow this discrimination complaint to proceed.

Signed

## CERTIFICATE OF SERVICE

I, hereby, certify that the enclosed document(s) were serviced VIA first class mail, postage paid, on this 25ᵀᴴ day of _MAY_ , _2007_ to the following person(s):

Equal Employment Opportunity Commission
OFFIC OF FEDERAL OPERATIONS
P.O.BOX 19848
WASHINGTON D.C.20036-9848

Kathy L. Janowicz
Agency Representative
Attorney
Law Department
United States Postal Service
225 N. Humphreys Blvd.
Memphis, TN 38166-0170
(901) 747-7350
Fax: (901) 747-7371

_5/25/07_
DATE

Butler B. Browder
4504 Sunnybrook Dr.
Montgomery, Al 36108
(334) 281-1473



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

JUN 1 2 2007

RECEIVED
JUN 1 8 2007
NEEOISO

Butler B. Browder
4504 Sunnybrook Drive
Montgomery, AL 36108

RE:    *Butler B. Browder v. United States Postal Service*
        Petition No. 0320070068

Dear Mr. Browder:

This is in response to correspondence this office received dated May 25, 2007, in which you sought reconsideration of the Commission's decision in the above captioned petition for review from the decision of the MSPB on your mixed case.

EEOC regulations at 29 C.F.R. Part 1614 do not provide for reconsideration of mixed case appeals or mixed case complaints. As detailed in 29 C.F.R. § 1614.405(a) and (b), the Commission considers requests for reconsideration only on appeals from final agency actions. As MSPB mixed case appeals and mixed case complaints do not constitute final agency actions, Commission reconsideration of such petitions is unavailable. Accordingly, the Commission declines your request to docket a request for reconsideration of this petition, and our decision in 0320070068 remains the Commission's final decision.

Sincerely,

*Robert J Barnhart*

Robert J. Barnhart
Director
Compliance and Control Division

cc:    United States Postal Service

JUL 3 2007

EXHIBIT
15

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| BUTLER B. BROWDER, | * |
| | * |
| Plaintiff, | * |
| | *    CIVIL ACTION NO. 2:07-CV-391-ID |
| v. | * |
| | *    CIVIL ACTION NO. 2:07-CV-546-MEF |
| JOHN E. POTTER, USPS | * |
| POSTMASTER GENERAL, | * |
| | * |
| Defendants. | * |

**DECLARATION OF PETER C. MARCOUX**

I, Peter C. Marcoux, declare as follows from personal knowledge:

1.       I am an Area Labor Relations Representative in the Southeast Area of the United States Postal Service domiciled in Memphis, Tennessee. I share access to the Postal Service labor relation's electronic document and information archiving system known as GATS (Grievance-Arbitration Tracking System). This system tracks the processing of grievances, and archives select copies of grievance decisions and arbitration awards, through the grievance-arbitration procedures established between the Postal Service and a labor Union collectively representing a group of postal employees in accordance with the collective bargaining agreements entered into between the Service and that Union. The National Postal Mail Handlers Union (NPMHU), representing the craft of postal mail handlers, is one such union. GATS is a simultaneously created record of the processing of such grievances and the archiving of those select documents. GATS is composed of information and documents originated or secured in the course of case processing by or

from individuals with knowledge or from information transmitted by persons with knowledge at or near the time of the acts or events recorded. It was and is the regular practice of the Postal Service to create GATS records and archival documents, and such continue to be maintained in the normal course of business.

2.      I have searched GATS and have found that the NPMHU filed a grievance on behalf of Butler B. Browder of Montgomery, Alabama, concerning his proposed removal that was served on him in 2006. That grievance was prosecuted by the Union through the grievance-arbitration process and culminated in the issuance of a November 29, 2006, arbitration award by Arbitrator Thomas H. Pigford who sustained the removal. I am attaching as Exhibit 1 a copy of that award. In the body of the award at page 8, Arbitrator Pigford ruled that Browder had taken paid sick leave on two occasions in 2005 when he was not in fact sick in order to attend two Auburn University football games at separate locations. Arbitrator Pigford further ruled at page 7 that this nature of conduct, the most serious charged against Browder, would by itself merit Browder's discharge if it were factually demonstrated.

I have read the preceding two pages, and I state under penalty of perjury that the information stated there is true and correct of the best of my knowledge.

Dated this 27th day of August, 2007.

PETER C. MARCOUX
Area Labor Relations Representative
Southeast Area

2

# REGULAR ARBITRATION

In The Matter of the Arbitration

Grievant: Browder JR
Case No: H00M-1H-D 06062642
Union No: RG008

Between

UNITED STATES POSTAL SERVICE

And

National Postal Mail Handlers Union

BEFORE: Thomas H. Pigford
Arbitrator

APPEARANCES:

For the U.S. Postal Service:  Ms. Jerri Taylor

For the Union:  Mr. Jessie J. Leonard

Place of Hearing:  Montgomery, AL P&DC

Date of Hearing:  October 25, 2006

## AWARD SUMMARY

I conclude that Management had just cause to discharge Grievant from employment.
Accordingly, the grievance must be DENIED

EXHIBIT
1

2.

**Issue:**

Did the Postal Service have just cause to discharge Grievant from employment and, if not, what is the appropriate remedy?

**Stipulations:**

The parties stipulated Jt. Ex. 1, the National Agreement; Jt. Ex. 2, the grievance file, (pp. 1 – 170, excluding pp. 69, 70, 90-94, 100-103, 118-120, and 130); Jt. Ex. 3 (2 pages from the Employee and Labor Relations Manual-ELM); and Jt. Ex. 4 (2 pages from the Contract Interpretation Manual-CIM); into evidence.
 The parties also stipulated that on November 19, 2005 Grievant attended the Auburn University vs. The University of Alabama football game played in Auburn, AL.

**Background:**

The hearing was held on October 25, 2006. The parties presented documentary evidence and witnesses for sworn testimony. Additionally, the parties requested and were granted the opportunity to present written briefs. The briefs were to be postmarked by November 24, 2006. All briefs and citations of authority were duly received and have been considered in reaching the decision herein. The record was closed on November 24, 2006.
The initial issue raised concerned the appearance of a Court Reporter at the hearing to transcribe the proceedings. Management had procured the services of the reporter stating that there were other legal proceedings occurring with Grievant and that a transcript of the Arbitration proceedings may be needed. The Union vigorously objected to the Court Reporter's presence to transcribe the proceedings. The Contract, Article 15.B.8, p. 81, states;

> Normally, there will be no transcripts of arbitration hearings or filing of post-hearing briefs in cases heard in Regular Regional level arbitration, except either party at the National level may request a transcript, and either party, at the hearing may request to file a post-hearing brief. ---

Since both parties desired to file briefs in the case there were no contested issues regarding the filing of briefs.
With respect to the Court Reporter's transcribing the arbitration proceeding Management pointed to the file, Jt. Ex. 2, p. 1, revealing a letter dated October 16, 2006 from a National Level Postal Official to a National Level Union Official requesting the transcription of the hearing. No response from the Union was found in the file. The Union advocate noted the date on the letter, October 16, 2006, and its proximity (time-

3.

wise) to the hearing date, and stated that he was unaware of the Union's permission being given to transcribe the hearing. The Union representative argued that the Contract only gave USPS the right to request a transcript and absent evidence that the Union's consent had been given the transcription should not be allowed.

My ruling at the hearing was that there is obvious ambiguity in the contractual language regarding transcription of such arbitration proceedings absent the consent of both parties, and that I would allow the Court Reporter to remain and transcribe the hearing but that my notes would be the official record of the arbitration hearing and that I would not use the Court Reporter's transcription in reaching a decision in the case. Additionally, I stated that my notes of the arbitration proceeding would be destroyed following issuance of my decision as is my usual practice and I also stated that the Union and/or the Grievant could make their objections known to any other Hearing Official(s) in which the Postal Service might attempt to use the Court Reporter's transcript and that official could rule on such matters should they occur. I have not received a copy of the Court Reporter's transcription and obviously have not read nor relied upon such in reaching my conclusions herein.

Management issued Grievant a Notice of Proposed Removal dated February 2, 2006 which included charges of improper conduct, failure to follow instructions, failure to follow agency leave requesting procedures, and failure to maintain a regular work schedule. The letter included two elements of past record, a warning letter dated 07/05 for failure to maintain a regular work schedule and a 7-day no time off suspension for unacceptable conduct dated 09/05. Jt. Ex. 2, pp. 24-36. This proposal to remove Grievant was affirmed by Management following Grievant's appeal through the contractual grievance/arbitration procedures and the matter was appealed to arbitration. See Jt. Ex. 2, pp. 30-32.

Charge 1 against Grievant concerned Sick Leave taken by Grievant on Saturday November 12, 2005 and Friday and Saturday November 18 and 19, 2005. Grievant's normal work schedule was from 5:30 AM until 2:00 PM with regular off days as Sunday and Monday.

On Saturday November 12, 2005 Grievant reported for duty as scheduled but left work after an hour claiming sick leave, which was approved. Later in the day it is undisputed that Grievant left home to attend a college football game in Athens, GA between Auburn University and the University of Georgia scheduled for 7:30 PM CST, according to the testimony at the hearing. Grievant rode to the game with the mother of an Auburn football player and testified that he did not leave home until after 2:00 PM which would have been after his regular work schedule ended. The player's mother testified that she picked Grievant up at his home and drove as Grievant was not feeling well. The testimony revealed that Grievant often attended Auburn football games with the player's mother and was on the Auburn University's complimentary ticket list as the football player's Uncle. Jt. Ex. 2, p. 60.

The testimony revealed that Grievant's regular job duties required that he load and unload trucks and lift up to 70 lbs.

4.

Grievant testified that he was sick and on medication while he attended the game but that he was not too sick to ride to the game or to sit at the game although he did not feel well at all and was too sick to work his regular duty hours on that date. The Mother of the football player also testified that Grievant was ill. While records reveal that Grievant did receive sick pay for his duty hours on that date there is insufficient proof that he was either en route to or attending the game during duty hours. Later, after being confronted with these facts during investigation of the matter, Grievant contended that he left a blank leave slip with another employee for the time off and that the Supervisor checked the sick leave block rather than the annual leave block on the form and that he had intended to take annual leave although either type leave would have been appropriate as he was sick. The Supervisor credibly testified that he had been told earlier that day by Grievant that he was sick and was leaving work and that was the reason he checked the sick leave block on the form. The Supervisor testified that he would not have approved annual leave had it been requested as he was short of personnel on that day and had others working on overtime status.

On November 18, 2005 Grievant called in and requested sick leave for November 18-19, 2005. He testified that he had back problems on Nov.18, 2005, which kept him in bed. Evidence reveals that Grievant attended the Auburn – University of Alabama football game in Auburn, AL on November 19, scheduled for 2:00 PM. Auburn, AL is approximately a one-hour drive from Montgomery, AL. Grievant was first seen in the stadium at 1:45 PM revealing that he had to have been en route to the game during his work hours for which he used sick leave. During investigation of the matter Grievant contended that while he was too ill to work he nevertheless attended the game, which he contended, was after his duty hours.

Grievant was also charged with failing to follow instructions for leaving a form 3971 requesting sick leave to attend a doctors appointment on another employee's desk on December 2, 2005 contrary to prior instructions to notify a supervisor prior to leaving work.

On January 3, 2006 Grievant's Supervisor called Grievant's home and left Grievant a message that he needed to speak with him. The Supervisor was attempting to schedule an Investigative Interview with Grievant regarding the final investigation report regarding Grievant's being on sick leave when attending the two football games. Grievant did not return his Supervisor's telephone call. On January 5, 2006 the Supervisor found Grievant at the Post Office in the break room playing cards with other employees while in an off-duty status. Grievant was on extended sick leave at the time. The Supervisor asked Grievant to meet with him at that time and Grievant refused, stating that he was not on the clock. Grievant was told that he would be placed on the clock for the meeting, but Grievant nevertheless still refused to meet with the Supervisor. Thereafter, on January 6, 2006 Grievant was sent a letter directing that he report for duty on January 10, 2006 to meet with the Supervisor. Grievant failed to report as instructed and sent management a letter dated January 7, 2006 stating that he did not have anything to discuss with the Supervisor. On January 10, 2006 Grievant was sent another letter directing that he report for duty no later than January 17, 2006 to participate in an Investigative Interview regarding an investigative report concerning his attendance at the two football games

5.

discussed above while in a sick leave status. Grievant again refused to report as instructed leading to the charge of failing to follow instructions. Grievant testified that he went to work on December 2, 2005 and told his Supervisor that he needed a longer break due to his medical condition. The Supervisor told him to see employee Osborne who would gather the necessary forms for Grievant to take to his doctor. After Osborne gave Grievant the forms Grievant gave Osborne a form 3971 and left. Grievant testified that the Supervisor was tied up with other matters at that time and was not on the work room floor and as he had told him earlier that he was leaving he assumed it was appropriate to leave the 3971 with Osborne who the Supervisor has designated to obtain the papers for him.

Grievant testified that his physician sent him for scans on December 5, 2005 to determine what his problems were and gave him forms to request Family Medical Leave (FMLA) on December 7, 2005 and restricted him to no prolonged standing or walking and no lifting more than 7 lbs. Upon receipt of Management's letter dated January 5, 2006 instructing him to report for a meeting on January 10, 2006 to discuss his request for light duty Grievant wrote to Management advising that since he was on FMLA he could not attend the meeting as instructed.

The third charge against Grievant in the proposal to remove letter was for failing to follow leave request procedures. Grievant was scheduled to work overtime on October 3, 2005 and failed to report as scheduled or to follow established call-in procedures to report his absence. Additionally, he was charged with failing to follow call-in procedures on November 18, 2005 when he called the workroom floor and advised Acting Supervisor Nikki Lowe that he was requesting sick leave for 2 days. Ms. Lowe instructed Grievant to call the IRT Center as he was supposed to do and he refused to do so. Grievant testified that he had attempted to call the center but could not get through and that it was well known that the call-in center was having major problems at that time.

Grievant conceded that he did not call in to report his absence when scheduled to work overtime on October 3, 2005 but testified that employees did not have to call in when missing overtime, they simply did not show up and this was a long standing practice. Grievant's testimony in this regard was supported by the testimony of two other employees.

Grievant was also charged with failing to maintain a regular work schedule citing absences on 10/03/05, 10/18/05, 10/19/05, 10/20/05, 10/21/05, 11/12/05, 11/18/05, 11/19/05 and 12/02/05. Grievant testified that he notified his Supervisor on either 10/12 or 10/13/05 that he was to have an overnight stay in a hospital and submitted appropriate leave forms for the absences. He left work early on 10/18 and reported to a sleep disorder clinic for tests. He remained there through 10/19, and after these testes were completed he had a digestive disorder requiring absence from work on 10/20-21.

Grievant testified, without contradiction, that he was a 35 year employee of the Postal Service, had accumulated over 1500 hours of sick leave and over 1200 hours of annual leave and had not been irregular in attendance despite having these health problems which required the absences cited.

6.

**Conclusions:**

The charge against Grievant for failure to maintain a regular work schedule (Charge 4) is based upon 9 absences within a two-month period for which Grievant was granted sick leave. While employees may be held accountable for absences when sick where the absenteeism is so chronic to lead to the conclusion that the employee will be unable to meet requirements to come to work regularly such a conclusion is usually reached after a prolonged period of illness and absenteeism which demonstrates that the employee cannot meet his/her obligations to come to work, and not on short or sporadic instances of absenteeism due to illness. This theory of discharge is commonly referred to as one of economic necessity rather than a disciplinary action (i.e. the employee, despite good effort is simply unable to uphold his duty to come to work for the pay he receives). The factors supporting this theory of discharge are not present here and it is difficult to conclude that a 35 year employee who has accumulated over 1500 hours of sick leave and over 1200 hours of annual leave has not maintained a regular work schedule, especially where such decision is based upon such a short time span. I must conclude that charge 4 lacks merit.

Regarding Charge 3, failure to follow leave requesting procedures when Grievant failed to call in to report that he would not work scheduled overtime, two Union witnesses testified that it was common practice for employees scheduled for overtime to simply not report for duty if they were unable to work the overtime and that there was no action taken against the employees who did not report for the overtime work even if they did not call in to report their absence. Accordingly, I must find that the charge against Grievant for not calling in when he missed overtime on October 3, 2005 is insufficient to sustain discipline.

With respect to the November 18, 2005 sick leave instance it is not rebutted that Grievant called and notified an acting Supervisor (Nikki Lowe) that he would not report for his regularly scheduled tour of duty and that Lowe reported same to the General Supervisor. Management therefore knew that Grievant was taking sick leave and initially approved the sick leave. Management issued the charge because Grievant did not call the IRT center as instructed. Grievant testified that he attempted to call the IRT center but could not get through. Management witnesses agreed that they were having problems with the IRT telephones at that time. I must conclude, based on this evidence, that this charge against Grievant is not supported by the evidence.

With respect to charge 2, failure to follow instructions concerning Grievant's leaving a leave slip on a desk On December 2, 2005 and not advising his Supervisor that he was leaving work, the facts as developed at hearing do not comport with the charge stated in the proposed removal letter. Grievant testified that he reported to work and advised two Supervisors that he needed a longer break at work due to medical problems. Supervisor Harris told him he needed necessary light duty forms signed by his Doctor and assigned another employee, Mike Osborne, to work with Grievant to obtain the necessary forms for Grievant to take to his physician for signature. Osborne obtained the forms for Grievant and Grievant completed a sick leave form in order to go to the Doctor

7.

and left the form with Osborne to give to the Supervisor. Grievant testified that Supervisor Harris was not present at the time and since he had already informed him that he would be leaving and Harris had assigned Osborne to obtain the necessary forms for him to take to the Doctor he thought it was appropriate to leave the sick-leave form with Osborne. Harris did not dispute this testimony and employee Osborne was not called to testify. Under these circumstances I cannot conclude that this constituted a refusal by Grievant to comply with Management instructions.

The next two elements of charge 2 are interrelated with charge 1 and will be dealt with below. These two incidents, letters to Grievant dated January 6, 2006 and January 10, 2006, were attempts by Management to have Grievant report to the Post office to conduct an investigatory interview with him regarding the investigative report submitted by the OIG Investigator concerning Grievant's attendance at the Auburn-Georgia, and the Auburn-Alabama football games in 2005 while in a sick leave status.

The improper conduct charge of charge 1 (attendance at these football games by Grievant while in a sick leave status) are the two most serious charges herein and undoubtedly led to Management's decision to issue the notice of discharge. Management has submitted sufficient prior arbitration awards relevant to such situations to convince me that if the proof revealed Grievant intentionally requested sick leave for the purpose of attending these games when he was not ill that is grounds for discharge. The rationale for these awards is that the Postal Service must expect honesty of their employees and that a showing of employee dishonesty in such regards is grounds for discharge even where progressive discipline under the contract has not occurred.

There is evidence herein that Grievant is guilty of this. The evidence shows that Grievant had planned in advance to attend the games but did not request advance annual leave which would have placed him in a scheduled leave status. The football player's mother testified that Grievant had attended games with her in the past and that he had planned to attend these two games also. The OIG report reveals that Auburn University officials stated that the complimentary tickets, such as used by Grievant, are scheduled in advance as names are placed on a list and the listed individuals scheduled to attend the game are admitted with a proper showing of identity after they sign for the tickets at the game. Such precautions are taken in order to prevent the tickets being resold or used by someone else. Clearly Grievant had planned to attend these games in advance. Clearly Grievant did not request annual leave in advance to attend either game. The evidence is also conclusive that Grievant left work on the day of the Auburn-Georgia game (November 12, 2005) in a sick leave status and traveled to Athens, GA for the game which was scheduled for 7:30 PM. The evidence in inconclusive as to the time he left and it cannot be determined if he actually traveled during his working hours or not. He testified at hearing that he left a blank leave form for his Supervisor to fill in the blanks, and he thought the Supervisor would check the annual leave box rather than the sick

8.

leave box. Again, although he maintains that he was, in fact, ill his claim that he wanted the Supervisor to check the annual leave box on the form rather than the sick leave box implies that he was not, in fact sick. He did not, however, raise the contention that he thought he was getting annual leave when initially questioned by the OIG Investigator. When initially asked by the Investigator why he used sick leave to attend the Auburn-Alabama game Grievant stated that did not happen, that the game was after his tour of duty ended. (Jt. Ex. 2, pp 63-64). After the interview was completed and Grievant and his Union Representative had left the room, Grievant returned after a brief period and asked the Investigator to review the leave form again. After reviewing the form Grievant stated that the comment on the form "Left Sick" was not his handwriting and that he intended to take annual leave for the absence. (Jt. Ex. 2, pp.63-64). Grievant's Supervisor, however, credibly testified that he wrote the comment on the blank form left by Grievant and checked the sick leave box because Grievant had informed him earlier in the morning that he wanted sick leave. The Supervisor further testified that he would not have approved unscheduled annual leave for Grievant.

The proof is conclusive that Grievant traveled to Auburn, AL on Nov. 19, 2005 during his working hours while in a sick leave status as he was seen inside the stadium at 1:45 PM while his work tour did not end until 2:00 PM. Again Grievant contends that he was sick, although he attended the game. While it may be possible for Grievant to attend these games sick while feeling too ill to go to work, Grievant never offered an explanation as to why he did not apply for scheduled annual leave in advance in order to attend the games. The evidence is preponderant that Grievant planned to attend the games in advance. If he had applied for annual leave and then became ill he could have changed the leave from annual to sick. Under all these circumstances I am persuaded that Grievant improperly used sick leave to attend these athletic events when, in fact, he was not sick. Part of the evidence leading to this conclusion is Grievant's complete lack of cooperation with Management Official's efforts to properly investigate these matters. Management notified Grievant by letter dated November 18, 2005 that he was being required to provide medical documentation for the sick leave he claimed for November 18 and 19, 2005. He simply refused to provide such documentation, and the fact that he was not on sick leave restriction does not provide him an excuse for such a refusal. Had he provided some type of medical evidence that he was ill his claim that he was, in fact, sick on Nov. 19, 2005 when attending the football game would have more validity.

Under the terms of the contract Grievant is entitled to an investigatory interview to provide his side of the story during such investigations. The evidence reveals that Grievant simply refused to cooperate with Management in its attempt to follow the contract in these regards. After the OIG investigative report regarding Grievant's attendance at the two football games in a sick leave status was received a copy was sent to Grievant. On January 3, 2006 the Supervisor called Grievant's home, Grievant was on extended sick leave as work with his light duty restrictions was not available at the time, and left a message that he needed to speak with Grievant. Grievant did not return the call. On January 5, 2006 the Supervisor found Grievant in the break room while still off duty playing cards with other employees who were on break and asked him to come to the

9.

office for a meeting. Grievant refused stating that he was not on the clock. He was told that he would be placed on the clock for the meeting but Grievant still refused to meet with the Supervisor. Grievant was then sent a letter on January 6, 2006 instructing him to report for duty on January 10, 2006 to meet with the Supervisor. Grievant replied by letter dated January 7, 2006 again refusing to meet. Grievant was sent another letter dated January 10, 2006 instructing him to report immediately, no later than January 17, 2006 for another Investigative Interview. Grievant responded by letter dated January 12, 2006 again refusing to report and requesting sick leave. At hearing the Union raised an FMLA issue with respect to Grievant's refusal to meet with Management and Management objected contending that such an issue was never raised in the Grievance procedure. Such an issue is precluded from being belatedly raised by Article 15 of the contract. Even if an FMLA issue had been properly raised, however, it would not have precluded Management's meeting with Grievant to give him an opportunity to answer the allegations against him contained in the OIG Investigative report. The authorities provided by the Union to the effect that Management cannot order an employee back to duty who is in an FMLA status are totally inapposite to the situation here.

Grievant has two prior disciplinary incidents of record, a letter of warning dated 7/5/05 regarding a failure to maintain a regular work schedule and a 7-day No Time Off Suspension for taking sick leave to go to a Biloxi, MS gambling casino. Although this was a no time off suspension the letter warned Grievant that it was considered the same as a regular 7 day suspension for purposes of meeting the progressive discipline standards of the contract. Apparently this warning went unheeded by Grievant as he has now utilized sick leave to attend two separate football games. Under all these circumstances I must conclude that the evidence is sufficient to prove just cause for Grievant's discharge.

**Award:**

I find that just cause has been proven for Grievant's removal from employment. Accordingly, the grievance is DENIED.

Date of Award: November 29, 2006
PANEL:  Southeast Area Regular

_Thomas H Bigford_
ARBITRATOR