**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| BUTLER B. BROWDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. **2:07-CV-546-MEF** |
| | ) |
| JOHN E. POTTER, USPS | ) |
| POSTMASTER GENERAL, | ) |
| | ) |
| | ) |
| Defendants.[1] | ) |

**AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

**I.  STATEMENT OF THE CASE**

Butler B. Browder asserts that he has been the victim of EEO-type race and

reprisal discrimination and subject to arbitration proceedings that were not done

according to the terms of a collective bargaining agreement.   He asserts that causes of

action lie under Title VII of the Civil Rights Act of 1964 and 29 U.S.C. § 2601 et seq.

---

[1]    It appears that Plaintiff may also be attempting to sue individually Charlie J. (C.J.) Harris, Manager, Distribution Operations, Huntsville, AL, Plant; Rod Carleton, Plant Manager, Montgomery, AL, Processing & Distribution Center; and Joey Sherman, Acting Postmaster, Mobile, AL.  To the extent that Plaintiff may be attempting to sue postal management officials in their individual capacities in the instant actions, these postal management officials are improper party defendants, pursuant to 42 U.S.C. § 2000e-16(c), and they should be dismissed.  "'The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.'" *Hinson v. Clinch County, Georgia Board of Education*, 231 F.3d 821, 827 (11th Cir. 2000), *quoting, Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991).   Similarly, to the degree the plaintiff is attempting to sue Thomas Pigford, the arbitrator in his Union girevance, his claims are subject to dismissal as Mr. Pigford enjoys arbitral immunity. *See,* Howland v. U.S. Postal Service, 209 F.Supp.2d 586 (W.D.N.C. 2002).

and, further, that the Court enjoys subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2), and 29 U.S.C. § 2000-e(5).  For relief, Plaintiff seeks reinstatement, back pay, compensatory damages,, injunctive and declaratory relief, attorney's fees, and costs.

## II.  STATEMENT OF UNDISPUTED FACTS

1.     On February 2, 2006, a Notice of Proposed Removal was served on Butler B. Browder delineating specific allegations of misconduct, including both (as stated in Charge 1 of the Notice) that Browder twice claimed paid sick leave when he was not ill in order to attend football games and (as stated in Charge 2 of the Notice) that Browder failed to report to work as directed first on January 10, 2006, and then on January 17, 2006, for an investigative interview about the substance of Charge 1.  (Exhibit 1 to the Eaves Declaration).

2.     Browder filed an administrative EEO complaint over his removal in which he alleged race and reprisal discrimination.  (Exhibit 2 to the Eaves Declaration).  That complaint was determined by the Agency to constitute a "mixed case" complaint.  Mixed cases arise in connection with administrative actions that can be appealed to the Merit Systems Protection Board (MSPB or Board) and concerning which allegations of EEO-type discrimination are also being brought.  In such cases, if an employee files a formal EEO complaint first, the filing is denominated a "mixed case *complaint*."  If, on the other hand, the employee first pursues an appeal with the MSPB, the matter is called a "mixed case appeal."  So long as the MSPB does enjoy jurisdiction with respect to the action

being appealed, only the MSPB is empowered to conduct an administrative hearing on all

issues that the employee seeks to prosecute, including the EEO claims.  *See* 29 C.F.R. §

1614.302 applying 5 U.S.C. § 7702(a)(1)("the Board . . . shall decide both the issue of

discrimination and the appealable action  . . . .").

     3.     After the Agency's investigation of Browder's EEO complaint, the Agency

issued a July 31, 2006, Final Agency Decision finding no discrimination with respect to

Browder's removal and informing him of his right either to seek an administrative

hearing before the MSPB or to proceed to bring his EEO contentions to federal district

court.  (Exhibit 2 to the Eaves Declaration).

     4.     Browder, in fact, did appeal to the MSPB on August 21, 2006.  (Exhibit 3 to

the Eaves Declaration).

     5.     In the course of processing the appeal, on November 8, 2006, MSPB

Administrative Judge (AJ) Stuart A. Miller ordered the parties to submit prehearing

submissions, which were to include the factual and legal contentions of the parties.

(Exhibit 4 to the Eaves Declaration).  Browder, in his capacity as the Appellant, filed with

the Board a statement of issues that he intended to bring before the MSPB for

adjudication.  Browder's statement specifically raised allegations of Family Medical

Leave Act (FMLA) violations with respect to the disciplinary specifications alleging that

Appellant failed to follow orders when he failed to report as directed for investigative

interviews on January 10 and 17, 2006.  See ¶¶ 1 and 3 within the document (Exhibit 5 to

the Eaves Declaration).  The MSPB has jurisdiction to adjudicate FMLA defenses in

connection with employment actions otherwise appealable to the Board.  *See, e.g.,*

*Ellshoff v. Department of the Interior*, 54 MSPR 972 (1997).

6.     While Browder was pursuing his regulatory avenues of redress, his Union,

the National Postal Mail Handlers Union (NPMHU), was simultaneously prosecuting a

contractual grievance on his behalf that was decided through arbitration on November 29,

2006.  (Exhibit 1 to the Marcoux Declaration).  Arbitrator Thomas H. Pigford determined

in that arbitral award at page 7 that "attendance at . . . football games by Grievant

[Browder] while in a sick leave status . . . are the most serious charges" and that "if the

proof revealed Grievant intentionally requested sick leave for the purpose of attending

these games when he was not ill[,] that is grounds for discharge."  The Arbitrator

determined at pages 8-9 of the award that he was "persuaded that the Grievant improperly

used sick leave to attend these athletic events when, in fact, he was not sick" and then the

Arbitrator sustained Browder's discharge.

7.     On December 4, 2006, Browder and the Postal Service entered into a

settlement agreement, the terms of which were taken by, read aloud by, and so entered

into the MSPB record by AJ Miller.  Among other terms, the agreement at pages 5 and 7

of its transcription provided for the rescission of the removal action taken against

Browder, required Browder to rather retire from the Postal Service under the conditions

set by the agreement, and also provided that the MSPB appeal from the discharge—as

well as all pending individual EEO complaints and all pending individual grievances filed

by Browder—were settled.  (Exhibit 6 to the Eaves Declaration).

8.      That same day AJ Miller issued an initial decision finding the settlement

agreement to be valid on its face, entering the settlement agreement into the record, and

dismissing the underlying MSPB appeal.   The decision informed Browder that he had

only certain appeal rights from this ruling, either to the Full Board or to the United States

Court of Appeals for the Federal Circuit.  (Exhibit 7 to the Eaves Declaration).

9.      Also on December 4, 2006, Browder attempted to file with the AJ a

pleading in which Browder sought to have the settlement agreement "set aside."  (Exhibit

8 to the Eaves Declaration).   He additionally left a December 4, 2006, voice mail

message with Agency Counsel Kathy Janowicz, in which he states that he is trying to

contact the MSPB AJ in order to see if he "can vacate" the settlement agreement entered

into earlier that day.  (Exhibit 9 to the Eaves Declaration).

10.      Browder afterwards filed on December 12, 2006, a petition for review to the

Full Board of the MSPB, in which he asked the Board to find that the settlement

agreement was invalid.  (Exhibit 10 to the Eaves Declaration).  On March 6, 2007, the

Full Board issued a decision finding no reason to reverse the AJ's finding that a valid

settlement had been concluded and, therefore, denied Browder's petition for review.  The

Board decision informed Browder of his right to seek review of its decision by the United

States Court of Appeals for the Federal Circuit, the sole statement of appeal rights

afforded.  (Exhibit 11 to the Eaves Declaration).

11.      Browder subsequently sought to file an April 13, 2007, appeal of the MSPB

Final Order with the Office of Federal Operations (OFO) of the Equal Employment

Opportunity Commission (EEOC).  (Exhibit 12 to the Eaves Declaration).  The EEOC

issued a Decision dated May 15, 2007, holding that the EEOC lacked jurisdiction to

review procedural matters decided by the MSPB in advance of reaching any EEO issues

and, further, that the EEOC had no jurisdiction over settlement agreements entered into

the record of the Board.  (Exhibit 13 to the Eaves Declaration).

12.    Browder sent a May 29, 2007, motion to the EEOC, requesting that it

reconsider its declination to review the MSPB ruling on the validity of the settlement

agreement that was entered into during the Board proceedings.  (Exhibit 14 to the Eaves

Declaration).  The EEOC responded with a June 12, 2007, letter finding that the requested

reconsideration was not provided for by the EEOC regulations and that no further action

would be taken by the EEOC.  (Exhibit 15 to the Eaves Declaration).

## III.  ARGUMENT

**A.    *Plaintiff's Claims Are All Barred By The December 4, 2006, MSPB Settlement Agreement.***

1.    The MSPB Issued a Final Order Finding that Plaintiff Entered into a Valid and Binding Settlement Agreement.

Despite the Plaintiff's vehement opposition to the validity of the settlement

agreement regarding his discharge that was entered into the MSPB record, the simple

facts remain that the AJ found the agreement to be valid on its face and so gave it effect,

and that determination was upheld by the Full Board in the face of Plaintiff's petition to

the Board to find otherwise.  That determination constituted the Board's final action on

the question of the agreement's validity.  Further, despite being informed of his right to

appeal to the United States Court of Appeals for the Federal Circuit on two separate

occasions, Plaintiff, as he noted in his ill-fated effort to appeal this question to the EEOC

(Exhibit 12 to the Eaves Declaration), expressly eschewed following the one proper

course, appeal to the Federal Circuit, of which he was twice notified.

2.  The Federal Circuit is the Only Court with Jurisdiction to Review the MSPB
    Order Sustaining the Validity of the Settlement Agreement.

Prior to 1982, 5 U.S.C. § 7703(b)(1) provided that a final decision of the MSPB

was appealable to "the Court of Claims or a United States court of appeals."  Recognizing

that this scheme of review threatened, at the judicial level, the uniformity of interpretation

which the creation of the MSPB was intended to foster at the administrative level,

Congress enacted the Federal Courts Improvement Act of 1982 (FCIA), which amended §

7703(b)(1), to substitute the Court of Appeals for the Federal Circuit as the only judicial

body to which a non-mixed MSPB case could be appealed.  Furthermore, the Act

provides, 28 U.S.C. § 1295:

> (a)  The United States Court of Appeals for the Federal
> Circuit shall have **exclusive jurisdiction** -
>
> * * * * * *
>
> (a) of an appeal from a final order or final decision
> of the Merit Systems Protection Board pursuant to
> section 7703(b)(1). . . of Title 5.
> [Bold added.]

Thus, it is clear that only the Federal Circuit has jurisdiction to review a particular class

of MSPB decisions.

The legislative history of the FCIA explains the rationale behind the creation of the

Federal Circuit, an appeals court of national jurisdiction:

> [T]here are areas of the law in which the appellate courts
> reach inconsistent decisions on the same issue, or in which -
> although the rule of law may be fairly clear - courts apply the
> law unevenly when faced with the facts of individual cases.
> The difficulty here is structural.  Since the Supreme Court's
> capacity to review cases cannot be enlarged significantly, the
> remedy lies in some reorganization at the intermediate
> appellate level . . . .
>
> The creation of a new Court of Appeals for the Federal
> Circuit through a merger of the Court of Claims and the Court
> of Customs and Patent Appeals (CCPA) addresses these
> structural problems.  *The Act provides a new forum for the
> definitive adjudication of selected categories of cases.*  At the
> same time, it improves the administration of the system by
> reducing the number of decision-making entities within the
> federal appellate system.
>
> Testimony on the Federal Courts Improvements Act
> supported the premise that the capacity of the federal
> appellate courts to provide a nationwide answer to legal
> questions could be expanded through the establishment of
> new courts of appeals *whose jurisdiction is defined on a
> topical rather than a geographical basis.  The creation of the
> Court of Appeals for the Federal Circuit provides such a
> forum for appeals from throughout the country in areas of the
> law where Congress determines that there is special need for
> national uniformity.*
>
> [S. Rep. No. 275, 97th Cong., 2d Sess. 3-4, reprinted in 1982
> U.S. Code Cong. & Ad. News 11, 13-14 (emphasis added)
> (footnotes omitted).]

While the Federal Circuit has clearly held that it does not have jurisdiction to hear

the *merits* of "mixed" cases heard by the MSPB, *Williams v. Department of the Army*, 715

F.2d 1485 (Fed. Cir. 1983) (*en banc*), it has ruled with equal clarity that procedural or

threshold matters, which arise before the merits of the discrimination claim are reached,

are properly appealed only to the Court of Appeals for the Federal Circuit.  *Ballentine v.*

*Merit Systems Protection Board*, 738 F.2d 1244 (Fed. Cir. 1984).  In *Ballentine*, the court

held:

> [I]t is clear that the judicially reviewable action by the MSPB
> which makes an appeal a "case of discrimination" under §
> 7703(b)(2) that can be filed in district court is that the MSPB
> has decided "both the issue of discrimination and the
> appealable action. . . ."  § 7702(a)(1).  When an appeal has
> been taken to the MSPB, **until** the discrimination issue and
> the appealable action have been decided **on the merits** by the
> MSPB, *an appellant is granted no rights to a trial de novo in*
> *a civil action under § 7702 or § 7703*.  Yet, threshold issues
> such as the MSPB's own jurisdiction arise continually on
> appeal to this court, and we have taken jurisdiction over these
> cases. . . .   [Bold added.]

738 F.2d at 1246-47 (Emphasis supplied.)

Seeing no evidence "that Congress intended that no review exist for procedural or

threshold matters determined by the MSPB," *id.*, the court further found no evidence in

the legislative histories of these statutes to suggest anything, "other than that jurisdiction

be exercised by this court under § 7703(b)(1) unless and until the right of a petitioner

under § 7703(b)(2) to a trial de novo on the merits of a case is invoked. *Ballentine* ,738

F.2d at 1247.  The court then concluded the pertinent aspect of its analysis by stating:

> The language of § 7703(b)(1), as discussed in *Williams*, itself
> strongly suggests that until the merits of a "mixed"
> discrimination case are reached by the MSPB, procedural or

threshold matters, not related to the merits of a discrimination claim before the MSPB, may properly be appealed to this court. *As Williams noted, discrimination issues may be abandoned during MSPB proceedings or simply not appealed.* 715 F.2d at 1491. *See also Meehan v. United States Postal Service*, 718 F.2d 1069, 1074 (Fed. Cir. 1983). Therefore, our exercise of jurisdiction over MSPB decisions until issues touching the merits of a discrimination claim are appealed comports with the intent of § 7703(b)(1) and (2) and also allows the application of a unified body of case law concerning issues like that actually on appeal here, i.e., **the jurisdiction of the MSPB itself**, or perhaps questions as to whether good cause has been shown for the waiver of a filing deadline. As Judge Miller noted in his dissenting opinion in *Grenando v. Department of Justice*, 721 F.2d 804 (Fed. Cir. 1983), to hold otherwise would result not only in a waste of time and resources, *but also in lack of uniformity as each of some 94 different federal district courts (with appeals to their respective circuits) proceeds to define the metes and bounds of MSPB jurisdiction. Congress sought to avoid such consequences by consolidated appellate jurisdiction over MSPB cases in a single court - the Federal Circuit.* [721 F.2d at 810, footnote omitted.]

*Ballentine* ,738 F.2d at 1247 (Emphasis supplied.)

In a case which made clear that certain classes of federal employees do not enjoy a right of judicial review respecting personnel actions adverse to them, the Supreme Court has had occasion to affirm the superior standing of the Court of Appeals for the Federal Circuit under § 7703(b)(1) in interpreting the CSRA. *United States v. Fausto*, 484 U.S. 439 (1988). Noting that Congress was cognizant of "patchwork" administrative and judicial review of matters involving federal employment, the Court stated that:

Congress responded to this situation by enacting the CSRA, which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to

> balance the legitimate interest of various categories of federal
> employees with needs of sound and efficient administration.

*Fausto*, 484 U.S. at 445.  In this light, the Court held that for non-preference eligible

federal employees to enjoy direct access to the judiciary would undermine one of the two

principle structural elements of the CSRA: 484 U.S. at 449:

> The second structural element [of the CSRA] is the **primacy**
> of the MSPB for administrative resolution of disputes over
> adverse personnel action, 5 U.S.C. sections 1205, 4303(e)(3),
> 7513(d), 7701 (1982 ed. and Supp. IV), and the **primacy** of
> the United States Court of Appeals for the Federal Circuit *for
> judicial review*, section 7703.  This enables the development,
> through the MSPB, of a unitary and consistent Executive
> Branch position on matters involving personnel action, avoids
> an "unnecessary layer of judicial review" in lower federal
> courts, and "[e]ncourages more consistent judicial decisions. .
> . ." S. Rep. No. 95-969, at 52; *see Lindahl v. OPM*, 470 U.S.
> at 797-798.

*Fausto*, 484 U.S. at 445 (Emphasis supplied.)

Throughout *Fausto*, the Supreme Court evinced its concern that "the consistency

of interpretation by the Federal Circuit envisioned by § 7703 of the Act" not be

undermined.  484 U.S. at 450.  For one of the primary fruits of the CSRA judicial review

scheme which functions as Congress intended is that the situation would not arise in

which "an agency office would not know whether to follow the law of its geographical

circuit or the conflicting law of the Federal Circuit."[2]  *Id.*

---

[2]     Prior to 1982 and the advent of "exclusive" Federal Circuit jurisdiction under § 7703,
some civil service questions were addressed by the geographical circuit courts with outcomes
which varied from the holdings of the Federal Circuit.  The MSPB at one point did follow the
more stringent conflicting law of a geographical appellate court which, under applicable EEO
venue provisions, possibly could review the substance of civil service law in a mixed case

In this regard, it should be noted by the Court, as it was by the EEOC (Exhibit 13 to the Eaves Declaration), that both MSPB decisions on the validity of the settlement agreement gave *no* appeal rights to a federal district court, but only to the Federal Circuit—the judicial appellate avenue that has **not** been pursued by Plaintiff and, in fact, has rather been purposely avoided by him. *See Oja v. Dept. of the Army*, 405 F.3d 1349, 1355 n. 2 (Fed Cir. 2005) ("First, Mr. Oja's EEOC filing cannot be considered a petition for review by the Federal Circuit and instead implies the opposite – that Mr. Oja specifically sought to avoid review by this court.").

3. The MSPB Settlement of Plaintiff's Discharge is Valid as a Matter of Res Judicata and/or Collateral Estoppel and so Bars the Subject Matter of both of his Judicial Complaints that Seek Relief for that Same Discharge.

As may be ascertained from the face of his judicial complaints, Plaintiff is not attempting in any manner to challenge the validity of the settlement agreement but seeks rather to only address the merits of his discharge that were concluded by the settlement.

---

brought under 5 U.S.C. § 7702(b)(2). In a decision which presaged *Fausto*, however, the Board reversed that policy. *See Afifa v. Department of Interior*, 33 M.S.P.R. 282 (1987). In *Afifa*, the MSPB determined that it "is obliged to follow the precedent of the Federal Circuit Court of Appeals . . . even though another appellate court may actually review our decision." *Id.* As its justification, which virtually tracks the reasoning of *Fausto*, the Board held:

> This policy is necessary to the Board's further development of a coherent, uniform civil service jurisprudence. As noted above, an appellant in a mixed case has a variety of options by which to appeal a discrimination claim; under our previous policy it was often unclear to which court the appellant would appeal and, thus, which circuit's precedent we would apply. By applying the law of the Federal Circuit in this and all such future cases, the Board will bring a measure of consistency to a traditionally inconsistent area of federal employment law. *Id.*

He, therefore, ignores—and, thus, seeks to avoid—the application of the settlement to his claims that he has brought in his two judicial complaints concerning Plaintiff's self-same termination.  At most, his actions are only an implicit attack upon the finality and binding force of the MSPB decision affirming the validity of the settlement agreement.

That effort, however, is futile.  As stated in *Astoria Federal Savings & Loan Ass'n v. Solimono*, 501 U.S. 104, 107-08 (1991):

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States* v. *Utah Construction & Mining Co.*, 384 U.S. 394, 422, (1966).  Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.  To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. *See Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326, (1979).  The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, see *University of Tennessee* v. *Elliott*, 478 U.S. 788, 798, 92 L. Ed. 2d 635, 106 S. Ct. 3220 (1986), which acts in a judicial capacity.

This Federal Circuit has long implemented these understandings with respect to the adjudications of a number of federal agencies, including the MSPB.  "Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." *Stearn v.*

*Dep't of the Navy*, 280 F.3d 1376, 1380 (Fed Cir. 2002) (citing *Federated Dep't Stores,*

*Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981)).  Such a prior

decision by an administrative tribunal is no less effective as res judicata than one by a

judicial tribunal.  *Cook v. Principi*, 318 F.3d 1334, 2336 (Fed. Cir. 2002) (*en banc*)

("Principles of finality and res judicata apply to agency decisions that have not been

appealed and have become final.").  As the Federal Circuit held long ago, "this court has

jurisdiction to review decisions on threshold issues such as the MSPB's jurisdiction or, in

this case, *res judicata*."  *Spears v. MSPB*, 766 F.2d 520, 521 (Fed Cir. 1985) (finding in a

matter once appealed to the MSPB without prosecution of EEO claims, that the case was

res judicata when the appellant sought to return to the Board anew to prosecute those

claims anew and the EEOC regulations that appeared to allow such were invalid.).  *See*

*also Gibson v. USPS and APWU*, 380 F.3d 886, 889 (5th Cir. 2004) ("MSPB decisions

warrant application of the doctrine of res judicata" . . . and the "failure to appeal to the

Federal Circuit does not alter our conclusion that the MSPB acted in a judicial

capacity.").  Under these principles, the Board's 2006 decision—which found the

settlement agreement settling the issues connected to Plaintiff's discharge to be valid—is

res judicata.

        And since the settlement addresses the same nucleus of operative facts presented

by the judicial claims, i.e., whether Plaintiff was fired due to animus to his race or

protected EEO activity and also whether his discharge was based upon the assertion of

rights under the FMLA and retaliation against him for that assertion, these judicial

prosecutions are themselves barred by that settlement as a matter of either res judicata or collateral estoppel. *See Adams v. Southern Farm Bureau Life Ins. Co.*, No. 06-13162, 2007 U.S. App. LEXIS 17624, at *2 (11th Cir. July 25, 2007) (affirming the district court's decision and holding, *inter alia*, that appellants' claims were barred by the doctrine of res judicata when the claims fell within the scope of an earlier settlement); *In Re Martin*, 490 F.3d 1272 (2007) (holding that the doctrine of res judicata precluded a party from re-litigating defenses waived in the settlement agreement, and finding that for purposes of res judicata, the order approving the settlement agreement provided a final determination on the merits); *Phillips v. State of Georgia*, No. 15981, 2007 U.S. App. LEXIS 17423, at *3-4 (11th Cir. July 19, 2007) (unpublished opinion) (affirming the district court's grant of summary judgment, and concluding that plaintiff's claims were barred by his settlement agreement).

**B.     *Alternatively, Even If The FMLA Claims Were Not Barred By The Settlement, Those Claims Would Still Have To Be Dismissed Because Plaintiff Cannot Demonstrate That He Suffered Any Injury Due To The Alleged FMLA Violations.***

The FMLA provides at 29 U.S.C. § 2617(a)(1)(A)(i)(I) that "[a]ny employer who violates [the FMLA] shall be liable to any eligible employee affected . . . for damages equal to . . . the amount of . . . any wages, salary, employment benefits, or other compensation denied or lost to such employee ***by reason of the violation*** . . . ."  Section 2617(a)(1)(B) further states that a court may afford "such equitable relief as may be appropriate."

As noted in ¶ 6 of the statement of undisputed facts, while Plaintiff was pursuing his regulatory avenues of redress, his Union was simultaneously prosecuting a contractual grievance on his behalf that was decided through arbitration on November 29, 2006.  The Arbitrator determined in that arbitral award at page 7 that "attendance at . . . football games by Grievant [Browder] while in a sick leave status . . . are the most serious charges" and that "if the proof revealed Grievant intentionally requested sick leave for the purpose of attending these games when he was not ill[,] **that is grounds for discharge**." Such employee dishonesty, he held, "is grounds for discipline even when progressive discipline has not occurred."[3]  The Arbitrator determined at pages 8-9 of the award that he was "persuaded that the Grievant improperly used sick leave to attend these athletic events when, in fact, he was not sick" and then the Arbitrator—referring specifically at the end of his discussion on page 9 to Plaintiff's utilization "of sick leave to attend two separate football games"—sustained Browder's discharge.

Arbitral awards, in accordance with Federal Circuit precedent, are properly afforded collateral estoppel effect.  *See Kroeger v. USPS*, 865 F.2d 235, 238-40 (Fed Cir. 1988) (including cases cited within); a*ccord Greenblat v. Drexel Burnham Lambert Inc,* 763 F.2d 1352, 1360 (11th Cir. 1985).  The MSPB affords collateral estoppel effect to the finding of postal arbitrators both on the issue of liability and penalty determinations, so

---

[3]     As the Arbitrator noted at the end of his award on page 9 (Exhibit 1 to the Marcoux Declaration), Plaintiff did have prior elements of discipline, a letter of warning and a seven-day No-Time-Off suspension, the equivalent of an actual suspension.

long as a holding on the latter does not offend affirmative Board precedent. *Farrelly v. USPS*, 86 MSPR 230 (2000). Thus, it is clear that the arbitral holding that Plaintiff was properly discharged for his sick leave misuse alone is entitled to collateral estoppel. [4]

Since it is established that Plaintiff's sick leave misuse alone merited his termination, and since his FMLA claims rest solely upon his refusal to return to duty while on FMLA leave in order to participate in two separately-set investigative interviews, he cannot meet the statutory elements necessary to his FMLA claim. In short, he cannot show that his removal led to "wages, salary, employment benefits, or other compensation denied or lost to such employee *by reason of the* **[FMLA]** *violation*" or that equitable relief in the nature of a reinstatement is "appropriate" when other, wholly legal bases caused his discharge. *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989) ("We hold that when a plaintiff in a **Title VII** case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.").

---

[4]     To be clear, the Defendants are not asking for collateral estoppel to be applied to any arbitral holding on the FMLA issue itself, express or implicit, believing such to probably barred by *Barrentine v. Arkansas-Best Freight System Inc.* 450 U.S. 728 (1981). The arbitral holding for which the Defendants argue preclusive effect is that Plaintiff's sick leave derelictions in connection with the football games *alone* justified his removal as a matter of "just cause," a contract interpretation not requiring any reference to the FMLA and within the arbitrator's primary competence as expositor of the meaning of the collective bargaining agreement. *Cf. Owens v. Texaco*, 857 F.2d 262, 265 (5th Cir. 1988) ("[U]nder the *Steelworkers Trilogy*, the arbitral decision is final and binding to the extent it resolves questions of contractual rights" . . . [and thus "t]he district court was bound by the arbitrator's interpretation of the bargaining agreements and status of the parties.")

**C.      The plaintiff lacks standing to challenge the propriety of the proceedings in arbitration as well as the award.**

"When a collective bargaining agreement establishes a mandatory, binding grievance procedure and gives the union the exclusive right to pursue claims on behalf of aggrieved employees, the results obtained by the union are normally conclusive of the employees' rights under the agreement." McNair v. U.S. Postal Service, 768 F.2d 730, 735 (5th Cir. 1985), *citing,* Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) . However, "[i]It is established  that if the union has breached its duty of fair representation, by arbitrarily refusing to pursue a claim through the grievance process or by doing so in a perfunctory or otherwise inadequate manner, an aggrieved employee is not foreclosed by the results of the grievance process." McNair, 768 F.2d at 735..[5]  The aggrieved employee "may sue his employer or his union or both but, in order to recover, he must [allege  and] prove that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement.  McNair, 768 F.2d at 735;

---

[5]      Also "the cases hold that federal courts are not required to give preclusive effect to arbitration awards when an aggrieved employee asserts an independent cause of action, though it arises from the same conduct submitted to the grievance process, for violation of certain federal statutes.  *See* [McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)] (42 U.S.C. § 1983); [Barrentine v. Arkansas-Best Freight Systems, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)] (Fair Labor Standards Act, 29 U.S.C. §§ 201*et seq.* ); [Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)] (Title VII, 42 U.S.C. §§ 2000e*et seq.* ).   The theory of these cases is that 'in instituting an action under [the statutes], the employee is not seeking review of the arbitrator's decision.  Rather, he is asserting a statutory right independent of the arbitration process.' Gardner-Denver, 415 U.S. at 54, 94 S.Ct. at 1022.   Moreover, the Court has concluded that "Congress intended the statutes at issue to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes." McDonald, 104 S.Ct. at 1803.

Lomax v. Armstrong Cork Co., 433 F.2d 1277 (5th Cir. 1970) (" a prerequisite to a Section 301(a) suit in this case is an allegation and proof that the union arbitrarily, discriminatorily or in bad faith failed to exhaust the contractual procedures.")

Since the plaintiff "is attacking the arbitration process and the arbitrator's decision on the existence of just cause under the collective bargaining agreement,"and "[he] has not made the kind of allegations necessary to avoid the preclusive effect of the arbitrator's decision," he, "lacks standing to bring this suit."  McNair, 768 F.2d at 737.  The plaintiff's claim is therefore due to be and should be dismissed.

**D.     *Assuming, arguendo, the plaintiff has standing to bring his claims regarding the arbitration process, they are barred by the statute of limitations.*[6]**

The relationship between the Postal Service and its employees' bargaining representatives is governed by the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141*et seq.,* which is made applicable by the Postal Reorganization Act, 39 U.S.C. § 1209(a), (b). Federal courts have jurisdiction of disputes arising under collective bargaining agreements executed by the Postal Service pursuant to 39 U.S.C. § 1208(b). That section is the "analogue" of section 301(a) of the LMRA, 29 U.S.C. § 185(a), National Association of Letter Carriers v. United States Postal Service, 590 F.2d 1171, 1174 (D.C.Cir.1978), and the decisions under § 301 governing an employee's right to

---

[6]     This argument assumes, arguendo, that the plaintiff is attempting to amend his complaint to include a claim that his union breached its' duty of fair representation; an assumption not based on the face of the plaintiff's motion, nor from a fair interpretation of his *pro se*, pleading, but simply on the fact that only such an implied claim against the union would give him standing to prosecute an action on the basis of alleged infirmities in the arbitration process. *See,* McNair, 768 F.2d at 735.

vacate an adverse arbitration award are fully applicable to cases under the Postal

Reorganization Act.  McNair, 768 F.2d at 735.

In DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 165, 103 S.Ct.

2281, 2291, 76 L.Ed.2d 476 (1983), the Supreme Court adopted the six-month statute of

limitations found in section 10(b) of the National Labor Relations Act, 29 U.S.C. §

160(b), for all cases such as the present.  The Eleventh Circuit Court of Appeals has

applied this 6 month statute of limitations to cases arising under 39 U.S.C. § 1208(b).

See,  Coppage v. United States Postal Service,  281 F.3d 1200, 1024 (11th Cir. 2002).

"Thus, [the plaintiff] had six months to file [his] hybrid suit against the Union and the

Postal Service from 'the date he knew or should have known of the Union's final action or

the [Postal Service's] final action, whichever is later." Coppage, 281 F.3d at 1204, citing,

Adams v. United Paperworkers Int'l, 189 F.3d 1321, 1322 (11th Cir.1999).   "The 'final

action' is the point at which 'the grievance procedure was exhausted or otherwise

[broken] down to the employee's disadvantage.'" Coppage, 281 F.3d at 1204, citing,

Proudfoot v. Seafarer's Int'l Union, 779 F.2d 1558, 1559 (11th Cir.1986).

The plaintiff was fully aware of, and fully involved with, the final action taken by

his union representatives on December 4, 2006.[7]  Clearly, the plaintiff's claim is being

proffered more than 6 months beyond the date on which it accrued.  Moreover, should

any provision of Rule 15 apply, the proposed claim would still be untimely in reference to

June 19, 2007, the filing date of the original complaint.  See,  Brewer-Giorgio v.

---

[7]        See Exhibits 10, pp. 1 - 2 and 6 to Eaves Declaration..

Producers Video, Inc., 216 F.3d 1281, at 1285 (11th Cir. 2000)(" If the new claims relate

back to the original claims, we must consider the new claims as having been filed at the

time of the original claims. NLRB v. Atlanta Metallic Casket Co., 205 F.2d 931, 937 (5th

Cir.1953)").   The plaintiff's claim is untimely, barred by the statute of limitations and is

due to be and should be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant respectfully submits that he is entitled to, and

the Court should grant, judgment in his favor, with the costs of the litigation taxed to

Plaintiff.

Respectfully submitted this 27th day of September, 2007.

LEURA G. CANARY
United States Attorney


By: /s/R. Randolph Neeley
    R. RANDOLPH NEELEY
    Assistant United States Attorney
    Bar Number: 9083-E56R
    Attorney for Defendant
    Post Office Box 197
    Montgomery, AL  36101-0197
    Telephone No.: (334) 223-7280
    Facsimile No.: (334) 223-7418

OF COUNSEL:

KATHY L. JANOWICZ
Attorney
U.S. Postal Service
225 N. Humphreys Blvd.
Memphis, TN 38166-0170
(901) 747-7321 (Phone)
(901) 747-7371 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/EDF system and that I have served a copy of the foregoing upon the plaintiff by placing same in the United States Mail, properly addressed to 4504 Sunnybrook Drive, Montgomery, AL 36108.

s/R. Randolph Neeley
Assistant United States Attorney