# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DISTRICT

BUTLER BROWDER,                   2007 OCT 10  P 1:38

    Plaintiff

v.                                                            * CIVIL ACTION NO. 2:07-CV-546-MEF

JOHN E. POTTER, USPS
POSTMASTER GENERAL

    Defendant


## PLAINTIFF'S RESPONSE TO DEFENDANT'S AMENDED
## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS,
## OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT

### I.  Statement of the Case

1.  It appears that Plaintiff may also be attempting to sue individually Charlie J. (C.J.) Harris, Manager, Distribution Operations, Huntsville, AL, Plant; Rod Carleton, Plant Manager, Montgomery, AL, Processing & Distribution Center; and Joey Sherman, Acting Postmaster, Mobile, AL.  To the extent that Plaintiff may be attempting to sue postal management officials in their individual capacities in the instant actions, these postal management officials are improper party defendants, pursuant to 42 U.S.C. § 2000e-16(c), and they should be dismissed.  "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Hinson v. Clinch County, Georgia Board of Education*, 231 F.3d 821 (11th Cir. 2000), *quoting, Busby b. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).  Similarly, to the degree the plaintiff is attempting to sue Thomas Pigford, the arbitrator in his Union grievance, his claims are subject to dismissal as Mr. Pigford enjoys arbitral immunity.  See, Howland v. U.S. Postal Service, 209 F.Supp.2d 586 (W.D.N.C. 2001).

Plaintiff avers that the U.S. Postal Service is a Quasi Government Agency and therefore subject to the same penalties as a private company.  In that vain, RMO's, (ie. supervisors), are subject to be sued individually and as managers of the U.S. Postal Service.

Further, the Arbitrator may not hide behind Arbitral Immunity, when his actions violate or extend beyond the limits of his authority.

Page 2

Specifically, the Arbitrator is not a medical professional and was or is bound by the rules as stated by the "Code of Professional Responsibility for Arbitrators of Labor-Management Disputes of the National Academy of Arbitrators Federal Mediation and Conciliation Service American Arbitration Association" as amended and effective May 2007.

## 1. Arbitrator's Qualifications and Responsibilities to the Profession

### A. General Qualifications

1. Essential personal qualifications of an arbitrator include honesty, integrity, impartiality and general competence in labor relations matters.
   An arbitrator must demonstrate ability to exercise these personal qualities faithfully and with good judgment, both in procedural matters and in substantive decisions.

2. An arbitrator must be as ready to rule for one party as for the other on each issue, either in a single case or in a group of cases. Compromise by an arbitrator for the sake of attempting to achieve personal acceptability is unprofessional.

### B. Qualifications for Special Cases

1. When an arbitrator decides that a case requires specialized knowledge beyond the arbitrator's competence, the arbitrator must decline appointment, withdraw, or request technical assistance.

   a. An arbitrator may be qualified generally but not for specialized assignments. Some types of incentive, work standard, job evaluation, welfare program, pension, or insurance cases may require specialized knowledge, experience or competence. Arbitration of contract terms also may require distinctive background experience.

(See attachment A)

This Arbitrator, by the terms of the rules which govern his conduct, should have declined the case in that he could not determine whether Browder was "unable to perform his duties" on the days in question or employed those measures as outlined in the Collective Bargaining Agreement, and required management to send Browder for a Fitness for Duty exam before making a determination that was outside of or beyond his level of competence.

Page 3

Plaintiff avers that Thomas Pigford was selected by the U.S. Postal Service for the expressed purpose of ruling as he did in this case.

Further that the Postal Service knew Pigford as he was a former postal attorney turned Arbitrator, who has been given several such cases involving employees engaging in other activities while on sick leave, and who has consistently ruled similarly without regard to medical documentation or use of Postal Policy, which requires a Fitness for Duty exam to disqualify questions regarding an employee's ability to perform his/her duties.

This purposed intent on the part of the Arbitrator and the Postal Service is shown in that normally when a continuance is requested by the parties in the grievance process, the grievance is put back into the pool as to allow other Arbitrators the right to hear the particular case. However, when the Union sought to continue this grievance, Pigford retained the case.

## II.  Statement of Undisputed Fact

A.  The Agency states:

1. On February 2, 2006, a Notice of Proposed Removal was served on Butler B. Browder delineating specific allegations of misconduct, including both (as stated in Charge 1 of the Notice) that Browder twice claimed paid sick leave when he was not ill in order to attend football games and (as stated in Charge 2 of the Notice) that Browder failed to report to work as directed first on January 1-, 2006, and then on January 17, 2006, for an investigative interview about the substance of Charge 1.  (Exhibit 1 to the Eaves Declaration)

The Plaintiff avers that he violated no rule, regulation, term or condition of employment when he attended a football game on 11/12/2005 at 8:30 p.m. on a Saturday night (Plaintiff's off duty time), and when he attended a football game at 2:00 p.m. on a Saturday, 11/19/2005.  Noteworthy is the fact that Browder called in and requested 2-days sick leave on 11/18/2005.  No one needs two (2) days to attend a football game that is only sixty (60) miles away.  Attending a football game is not a demonstration that Browder was able to lift seventy (70) pounds, walk, stand, or bend continuously for eight (8) hours while at work.  Therefore, the Agency's action cannot be for just cause.

The Agency rules require only that an employee on sick leave not be gainfully employed or working another job while on sick leave unless that employee has prior approval to be so employed by postal management.

2. The Defendant states that Arbitrator Thomas H. Pigford determined in that Arbitral Award at Page 7 that "Attendance...football games by grievant (Browder) while in sick leave status...are the most serious charges" and that if the proof revealed Grievant intentionally requested sick leave for the purpose of attending these games when he was not ill, that is grounds for dismissal.

Page 4

The Plaintiff avers that this determination represents evident partiality, corruption, misconduct, prejudicing the rights of a party (Browder) and exceeding the power of the Arbitrator.

In <u>Marathon Oil Co. v. Arco Alaska, Incl, 972 p 2d 595, 600 (Alaska 1999); Ahtiva, Inc. v. Ebasco Construction, Inc., 894 p 2d 657, 660 (Alaska 1995),</u> the court found such conduct to be sufficient to warrant reversal of an arbitral award.

Further, in <u>City of Fairbanks V.R. cl, 628 p. 2d 565, 567 (Alaska 1981),</u> the court determined "gross error" is defined as "only those mistakes which are both obvious and significant." Plaintiff argues that the Arbitrator obviously exceeded his level of competence when he decided that Browder was not ill, when he should have been deciding whether Browder was able to perform his duties as a Mailhandler when he 1) disregarded Browder's testimony that he was unable to perform his duties, and 2) when he disregarded Browder's submission from a doctor or medical professional(s) who had treated Browder during the period of his incapacitation from duty.

The Arbitrator, as well as postal management official, has grossly misinterpreted the collective bargain agreement to that point that it seems to equate Incapacitation for Duty to total incapacitation.

Browder committed **no** violation by attending the football games. He was not working another job or exerting himself to the level expected of him if he were at work.

The Defendant states that Browder entered into a settlement agreement on December 4, 2006. This is also not true. Settlement agreements require written documents. Written agreements must be signed by the parties. This alleged agreement was by telephone and not reduced to writing, nor signed by the parties. No agreement was entered "into by Browder." Browder submits that MSPB Judge Miller erred by reading into the record an oral agreement which had not been reduced to writing or signatured by the parties.

## III. Argument

Defendants state:
    A. Plaintiff's Claims Are All Barred By The December 4, 2006, MSPB Settlement Agreement.

      1. <u>The MSPB Issued a Final Order Finding that Plaintiff Entered into a Valid and Binding Settlement Agreement</u>

Plaintiff argues that MSPB has no final authority over cases filed under Title VII and that its decision is not valid or binding in that the procedure used in determining this settlement to be valid violates the MSPB's terms for settlement agreements. In that this agreement was not entered into voluntarily represents a mistake in that the Union and Browder believed that a **written and signed** document was required, the agreement represented fraud and did not meet MSPB's requirements that only written settlement agreements be read into the record.

Page 5

2. <u>The Federal Circuit is the Only Court with Jurisdiction to Review the MSPB Order Sustaining the Validity of the Settlement Agreement</u>

The Federal Circuit only has authority over cases that do not involve matters of discrimination. Thus, the instruction to the Plaintiff was to file such matters to EEOC or a District Court.

In Footnote 3, page 16 of 23, the Defendant stated:

"As the Arbitrator noted at the end of his award on page 9 (Exhibit 1 to the Marcoux Declaration), Plaintiff did have prior elements of discipline, a letter of warning and a seven-day No-Time-Off suspension, the equivalent of an actual suspension."

The Plaintiff avers that the same miscarriage of justice exists in the prior discipline as did the latter. The Postal Service erroneously determined that Browder, while on sick leave, could not do anything else. This represents a willful misinterpretation of the rules governing sick leave usage. One need not be bedridden or confined to quarters to properly and legally take sick leave. The only requirement is that he/she not be able to perform his normal duties.

The Defendants argue that the Plaintiff's motion to amend is untimely. Plaintiff submits that the court has jurisdiction and discretion to amend complaints and extend time for filing beyond the normal limits imposed by law. Plaintiff herein prays that the court, in the interest of justice, exercises that authority.

The Agency's action to terminate the Plaintiff rests solely on the Agency's <u>belief</u> that the Plaintiff was **dishonest** in requesting sick leave during a period of time when he attended social functions. However, the Defendants cannot prove that Browder was, in fact, not sick or rather not incapacitated for duty during that period. To the contrary, the Defendants offered sick leave to the Plaintiff for the same condition (illness or incapacitation) for duty on December 7, 2005, less than a month from the time it alleged that Browder had misused sick leave. Neither the Defendants, nor the Arbitrator, abided by the rules as outlined in the Postal Regulations for determining questions of incapacitation (Fitness for Duty exam).

The actions of the Postal Service and Arbitrator can only be considered gross misconduct, abuse of authority and violation of a public law. A citizen of these United States is entitled to all of the freedoms and uses of public facilities, as guaranteed by our U.S. Constitution (ie. life, liberty, and the pursuit of happiness).

In June/July, 2005, Browder told the OIG Inspector that he was suffering from various conditions associated with his military disability claims. While the Postal Service and OIG had access to these records, they elected not to seek conformation of Browder's claims and subsequently, disciplined Browder for a medically-documented absence, as well as subsequent sick leave taken in connection with the same claim.

One can only conclude that the Defendants were not interested in whether Browder was sick or not, but rather that he attended a social function during a period when he was unable to load and unload trucks. This defies the expressed purpose for sick leave.

"Sick leave is for the purpose of insuring employees against
loss of pay while they are unable to perform their normal
duties."

Page 6

    This case contains disputes of material fact, and therefore, as a matter of law, may not be decided by Summary Judgment. Such facts are most importantly: 1) Did Browder commit a wrongful act by attending a social function that did not require the same level of activity as would be expected of him if he were at work (ie. unload trucks and sustained walking and standing); 2) Was Browder required to report for duty when asked while he was on FMLA and in opposition to the Postal Service's own Legal Department Rule, as stated in its email to all Postal managers. This email specifically stated that this Legal Department could not and should not send such notices to report to employees who had applied for or who were on approved FMLA. That such violated the FMLA Laws, also whether the Defendants deny postal employees the same liberties and rights due all Americans to life, liberty, and the pursuit of happiness simply because the employee is unable to perform his duties at work.

## CONCLUSION

    For the aforementioned reasons, the Plaintiff respectfully requests that the Defendant's motion for a dismissal of claims and summary judgment be denied.


Signed

_(signature)_

PRO Se
4504 Sunnybrook Dr
Montg. AL 36108
334 281 1473

Certificate of Service

This is to certify that the attached documents were sent to the below named individuals via U.S. Mail on 10/09/2007.

Signed

Butler Browder, Pro Se
4504 Sunnybrook Drive
Montgomery, AL 36108
(334) 281-1478

LEURA G. CANARY
1 COURT SQUARE
MONTGOMERY, AL

ANDERSON NELMS
847 S. MCDONOUGH STREET
MONTGOMERY, AL 36104



# Code of Professional Responsibility for Arbitration of Labor-Management Disputes of the

### *National Academy of Arbitrators*
### *Federal Mediation and Conciliation Service*
### *American Arbitration Association*

### *As Amended and Effective*
### *May 2007*

For information on FMCS Arbitration Services, please contact

**Federal Mediation and Conciliation Service**
The Office of Arbitration Services
2100 K Street, N.W.
Washington, DC 20427
(202) 606-5111; (202) 606-3749 - Fax
<u>arbitration@fmcs.gov</u>

Ex-A Page 1 of 2

# 1. ARBITRATOR'S QUALIFICATIONS AND RESPONSIBILITIES TO THE PROFESSION

## A. General Qualifications

1. **Essential personal qualifications of an arbitrator include honesty, integrity, impartiality and general competence in labor relations matters.**

   An arbitrator must demonstrate ability to exercise these personal qualities faithfully and with good judgment, both in procedural matters and in substantive decisions.

   a. Selection by mutual agreement of the parties or direct designation by an administrative agency are the effective methods of appraisal of this combination of an individual's potential and performance, rather than the fact of placement on a roster of an administrative agency or membership in a professional association of arbitrators.

2. **An arbitrator must be as ready to rule for one party as for the other on each issue, either in a single case or in a group of cases. Compromise by an arbitrator for the sake of attempting to achieve personal acceptability is unprofessional.**

## B. Qualifications for Special Cases

1. **When an arbitrator decides that a case requires specialized knowledge beyond the arbitrator's competence, the arbitrator must decline appointment, withdraw, or request technical assistance.**

   a. An arbitrator may be qualified generally but not for specialized assignments. Some types of incentive, work standard, job evaluation, welfare program, pension, or insurance cases may require specialized knowledge, experience or competence. Arbitration of contract terms also may require distinctive background and experience.

   b. Effective appraisal by an administrative agency or by an arbitrator of the need for special qualifications requires that both parties make known the special nature of the case prior to appointment of the arbitrator.

## C. Responsibilities to the Profession

1. **An arbitrator must uphold the dignity and integrity of the office and endeavor to provide effective service to the parties.**